## DEAN WITTER REYNOLDS INC. *v.* BYRD

No. 83–1708.   Argued December 4, 1984—Decided March 4, 1985

MARSHALL, J., delivered the opinion for a unanimous Court.   WHITE, J., filed a concurring opinion, *post*, p. 224.

*Eugene W. Bell* argued the cause for petitioner. With him on the briefs was *Kevin K. Fitzgerald.*

*Eric V. Benham* argued the cause and filed a brief for respondent.*

JUSTICE MARSHALL delivered the opinion of the Court.

The question presented is whether, when a complaint raises both federal securities claims and pendent state claims, a Federal District Court may deny a motion to compel arbitration of the state-law claims despite the parties' agreement to arbitrate their disputes. We granted certiorari to resolve a conflict among the Federal Courts of Appeals on this question. 467 U. S. 1240 (1984).

I

In 1981, A. Lamar Byrd sold his dental practice and invested $160,000 in securities through Dean Witter Reynolds Inc., a securities broker-dealer. The value of the account declined by more than $100,000 between September 1981 and March 1982. Byrd filed a complaint against Dean Witter in the United States District Court for the Southern District of California, alleging a violation of §§ 10(b), 15(c), and 20 of the Securities Exchange Act of 1934, 15 U. S. C. §§ 78j(b), 78o(c), and 78t, and of various state-law provisions. Federal jurisdiction over the state-law claims was based on diversity of citizenship and the principle of pendent jurisdiction. In the complaint, Byrd alleged that an agent of Dean Witter had traded in his account without his prior consent, that the number of transactions executed on behalf of the account was excessive, that misrepresentations were made by an agent of Dean Witter as to the status of the account, and that the agent acted with Dean Witter's knowledge, participation, and ratification.

---

*\*Joseph G. Riemer III* and *William J. Fitzpatrick* filed a brief for the Securities Industry Association, Inc., et al. as *amici curiae* urging reversal.

When Byrd invested his funds with Dean Witter in 1981, he signed a Customer's Agreement providing that "[a]ny controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration." App. to Pet. for Cert. 11. Dean Witter accordingly filed a motion for an order severing the pendent state claims, compelling their arbitration, and staying arbitration of those claims pending resolution of the federal-court action. App. 12. It argued that the Federal Arbitration Act (Arbitration Act or Act), 9 U. S. C. §§ 1–14, which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," § 2, required that the District Court compel arbitration of the state-law claims. The Act authorizes parties to an arbitration agreement to petition a federal district court for an order compelling arbitration of any issue referable to arbitration under the agreement. §§ 3, 4. Because Dean Witter assumed that the federal securities claim was not subject to the arbitration provision of the contract and could be resolved only in the federal forum, it did not seek to compel arbitration of that claim.[1] The District Court denied in its

---

[1] In *Wilko* v. *Swan*, 346 U. S. 427 (1953), this Court held that a predispute agreement to arbitrate claims that arise under § 12(2) of the Securities Act of 1933, 15 U. S. C. § 77*l*(2), was not enforceable. The Court pointed to language in § 14 of the Securities Act of 1933, 15 U. S. C. § 77n, which declares "void" any "stipulation" waiving compliance with any "provision" of the Securities Act, and held that an agreement to arbitrate amounted to a stipulation waiving the right to seek a judicial remedy, and was therefore void. 346 U. S., at 434–435. Years later, in *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506 (1974), this Court questioned the applicability of *Wilko* to a claim arising under § 10(b) of the Securities Exchange Act of 1934, or under Rule 10b–5, because the provisions of the 1933 and 1934 Acts differ, and because, unlike § 12(2) of the 1933 Act, § 10(b) of the 1934 Act does not expressly give rise to a private cause of action. 417 U. S., at 512–513. The Court did not, however, hold that *Wilko* would not apply in the context of a § 10(b) or Rule 10b–5 claim, and *Wilko* has retained considerable vitality in the lower federal

entirety the motion to sever and compel arbitration of the pendent state claims, and on an interlocutory appeal the Court of Appeals for the Ninth Circuit affirmed. 726 F. 2d 552 (1984).

## II

Confronted with the issue we address [2]—whether to compel arbitration of pendent state-law claims when the federal court will in any event assert jurisdiction over a federal-law claim—the Federal Courts of Appeals have adopted two different approaches. Along with the Ninth Circuit in this case, the Fifth and Eleventh Circuits have relied on the "doctrine of intertwining." When arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court, under this view, may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal

courts. Indeed, numerous District Courts and Courts of Appeals have held that the *Wilko* analysis applies to claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j(b), and that agreements to arbitrate such claims are therefore unenforceable. See, *e. g., DeLancie* v. *Birr, Wilson & Co.*, 648 F. 2d 1255, 1258–1259 (CA9 1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Moore*, 590 F. 2d 823, 827–829 (CA10 1978); *Weissbuch* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F. 2d 831, 833–835 (CA7 1977); *Sibley* v. *Tandy Corp.*, 543 F. 2d 540, 543, and n. 3 (CA5 1976), cert. denied, 434 U. S. 824 (1977); see also Brief for Petitioner 4, n. 3 (citing cases); Brief for Securities Industry Association, Inc., et al. as *Amici Curiae* 10, n. 7 (same).

Dean Witter and *amici* representing the securities industry urge us to resolve the applicability of *Wilko* to claims under § 10(b) and Rule 10b–5. We decline to do so. In the District Court, Dean Witter did not seek to compel arbitration of the federal securities claims. Thus, the question whether *Wilko* applies to § 10(b) and Rule 10b–5 claims is not properly before us.

[2] Respondent Byrd also argues that as a contract of adhesion this arbitration agreement is subject to close judicial scrutiny, and that it should not routinely be enforced. Byrd did not present this argument to the courts below, and we decline to address it in the first instance. We therefore express no view on the merits of the argument.

court.[3]   These courts acknowledge the strong federal policy in favor of enforcing arbitration agreements but offer two reasons why the district courts nevertheless should decline to compel arbitration in this situation.   First, they assert that such a result is necessary to preserve what they consider to be the court's exclusive jurisdiction over the federal securities claim; otherwise, they suggest, arbitration of an "intertwined" state claim might precede the federal proceeding and the factfinding done by the arbitrator might thereby bind the federal court through collateral estoppel.   The second reason they cite is efficiency; by declining to compel arbitration, the court avoids bifurcated proceedings and perhaps redundant efforts to litigate the same factual questions twice.

In contrast, the Sixth, Seventh, and Eighth Circuits have held that the Arbitration Act divests the district courts of any discretion regarding arbitration in cases containing both arbitrable and nonarbitrable claims, and instead requires that the courts compel arbitration of arbitrable claims, when asked to do so.   These courts conclude that the Act, both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and "not substitute [its] own views of economy and efficiency" for those of Congress.   *Dickinson* v. *Heinold Securities, Inc.*, 661 F. 2d 638, 646 (CA7 1981).[4]

We agree with these latter courts that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.   Accordingly, we reverse the decision not to compel arbitration.

---

[3] See *Belke* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 693 F. 2d 1023 (CA11 1982); *Miley* v. *Oppenheimer & Co.*, 637 F. 2d 318, 334–337 (CA5 1981); see also *Cunningham* v. *Dean Witter Reynolds, Inc.*, 550 F. Supp. 578 (ED Cal. 1982).

[4] See also *Surman* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 733 F. 2d 59 (CA8 1984); *Liskey* v. *Oppenheimer & Co.*, 717 F. 2d 314 (CA6 1983).

## III

The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

It is suggested, however, that the Act does not expressly address whether the same mandate—to enforce arbitration agreements—holds true where, as here, such a course would result in bifurcated proceedings if the arbitration agreement is enforced.[5] Because the Act's drafters did not explicitly

---

[5] Bifurcated proceedings might be the result in several kinds of cases involving securities transactions. For example, since this Court's decision in *Wilko* v. *Swan,* see n. 1, *supra,* claims arising under § 12(2) of the Securities Act of 1933 may not be resolved through arbitration, and when a court is confronted with a § 12(2) claim, pendent state claims, and a motion to compel arbitration, bifurcated proceedings might result. If *Wilko* applies to claims arising under other provisions of the Securities Acts, the same situation would arise. Also, when as here a federal securities claim and pendent state-law claims are filed and a party to the arbitration agreement asks only that the district court compel arbitration only of the pendent state claims, the prospect of a bifurcated proceeding arises.

Finally, federal courts have addressed the same issue when confronted with federal antitrust actions and pendent state claims. See, *e. g., Lee* v. *Ply\*Gem Industries, Inc.,* 193 U. S. App. D. C. 112, 121, 593 F. 2d 1266, 1274–1275, and n. 67 (holding that arbitrable claims should not become "subject to adjudication in court merely because they are related to non-arbitrable claims," when the dispute arises out of a contract containing an agreement to arbitrate), cert. denied, 441 U. S. 967 (1979).

consider the prospect of bifurcated proceedings, we are told, the clear language of the Act might be misleading. Thus, courts that have adopted the view of the Ninth Circuit in this case have argued that the Act's goal of speedy and efficient decisionmaking is thwarted by bifurcated proceedings, and that, given the absence of clear direction on this point, the intent of Congress in passing the Act controls and compels a refusal to compel arbitration. They point out, in addition, that in the past the Court on occasion has identified a contrary federal interest sufficiently compelling to outweigh the mandate of the Arbitration Act, see n. 1, *supra,* and they conclude that the interest in speedy resolution of claims should do so in this case. See, *e. g., Miley* v. *Oppenheimer & Co.,* 637 F. 2d 318, 336 (CA5 1981); *Cunningham* v. *Dean Witter Reynolds, Inc.,* 550 F. Supp. 578, 585 (ED Cal. 1982).

We turn, then, to consider whether the legislative history of the Act provides guidance on this issue. The congressional history does not expressly direct resolution of the scenario we address. We conclude, however, on consideration of Congress' intent in passing the statute, that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.

The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H. R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to overrule the judiciary's longstanding refusal to enforce

agreements to arbitrate.[6]    This is not to say that Congress
was blind to the potential benefit of the legislation for expe-
dited resolution of disputes.    Far from it, the House Report
expressly observed:

> "It is practically appropriate that the action should
> be taken at this time when there is so much agitation
> against the costliness and delays of litigation.    These
> matters can be largely eliminated by agreements for
> arbitration, if arbitration agreements are made valid
> and enforceable."    *Id.*, at 2.

Nonetheless, passage of the Act was motivated, first and
foremost, by a congressional desire to enforce agreements
into which parties had entered,[7] and we must not overlook
this principal objective when construing the statute, or allow
the fortuitous impact of the Act on efficient dispute resolu-
tion to overshadow the underlying motivation.    Indeed, this
conclusion is compelled by the Court's recent holding in
*Moses H. Cone Memorial Hospital* v. *Mercury Construction*

---

[6] According to the Report:

"The need for the law arises from an anachronism of our American law.
Some centuries ago, because of the jealousy of the English courts for their
own jurisdiction, they refused to enforce specific agreements to arbitrate
upon the ground that the courts were thereby ousted from their jurisdic-
tion.    This jealousy survived for so long a period that the principle became
firmly embedded in the English common law and was adopted with it by
the American courts.    The courts have felt that the precedent was too
strongly fixed to be overturned without legislative enactment, although
they have frequently criticised the rule and recognized its illogical nature
and the injustice which results from it.    This bill declares simply that such
agreements for arbitration shall be enforced, and provides a procedure in
the Federal courts for their enforcement."    H. R. Rep. No. 96, 68th
Cong., 1st Sess., 1–2 (1924).
See also Cohn & Dayton, The New Federal Arbitration Act, 12 Va. L.
Rev. 265, 283–284 (1926).

[7] See also 65 Cong. Rec. 1931 (1924) ("It creates no new legislation,
grants no new rights, except a remedy to enforce an agreement in commer-
cial contracts and in admiralty contracts").

*Corp.*, 460 U. S. 1 (1983), in which we affirmed an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings. That misfortune, we noted, "occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement," *id.*, at 20. See also *id.*, at 24–25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

We therefore are not persuaded by the argument that the conflict between two goals of the Arbitration Act—enforcement of private agreements and encouragement of efficient and speedy dispute resolution—must be resolved in favor of the latter in order to realize the intent of the drafters. The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a countervailing policy manifested in another federal statute. See n. 1, *supra*. By compelling arbitration of state-law claims, a district court successfully protects the contractual rights of the parties and their rights under the Arbitration Act.

## IV

It is also suggested, however, and some Courts of Appeals have held, that district courts should decide arbitrable pendent claims when a nonarbitrable federal claim is before them, because otherwise the findings in the arbitration proceeding might have collateral-estoppel effect in a subsequent federal proceeding. This preclusive effect is believed to pose a threat to the federal interest in resolution of securities claims, and to warrant a refusal to compel arbitration.[8]

---

[8] See, *e. g.*, *Belke* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 693 F. 2d, at 1026; *Miley* v. *Oppenheimer & Co.*, 637 F. 2d, at 336; *Cunningham* v. *Dean Witter Reynolds, Inc.*, 550 F. Supp., at 582.

Other courts have held that the claims should be separately resolved, but that this preclusive effect warrants a stay of arbitration proceedings pending resolution of the federal securities claim.[9]   In this case, Dean Witter also asked the District Court to stay the arbitration proceedings pending resolution of the federal claim, and we suspect it did so in response to such holdings.

We believe that the preclusive effect of arbitration proceedings is significantly less well settled than the lower court opinions might suggest, and that the consequence of this misconception has been the formulation of unnecessarily contorted procedures.   We conclude that neither a stay of proceedings, nor joined proceedings, is necessary to protect the federal interest in the federal-court proceeding, and that the formulation of collateral-estoppel rules affords adequate protection to that interest.

Initially, it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims. .Just last Term, we held that neither the full-faith-and-credit provision of 28 U. S. C. § 1738, nor a judicially fashioned rule of preclusion, permits a federal court to accord res judicata or collateral-estoppel effect to an unappealed arbitration award in a case brought under 42 U. S. C. § 1983.   *McDonald* v. *West Branch*, 466 U. S. 284 (1984).   The full-faith-and-credit statute requires that federal courts give the same preclusive effect to a State's *judicial proceedings* as would the courts of the State rendering the judgment, and since arbitration is not a judicial proceeding, we held that the statute does not apply to arbitration awards.   *Id.*, at 287–288.   The same analysis inevitably would apply to any unappealed state arbitration

---

[9] See, *e. g.*, *Surman* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 733 F. 2d, at 62–63; *Dickinson* v. *Heinold Securities, Inc.*, 661 F. 2d 638, 644 (CA7 1981); see also *Liskey* v. *Oppenheimer & Co.*, 717 F. 2d, at 318 (discussing *Dickinson*).

proceedings. We also declined, in *McDonald*, to fashion a federal common-law rule of preclusion, in part on the ground that arbitration cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard. We therefore recognized that arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings.

Significantly, *McDonald* also establishes that courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding. Since preclusion doctrine comfortably plays this role, it follows that neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court action. The Courts of Appeals that have assumed collateral-estoppel effect must be given to arbitration proceedings have therefore sought to accomplish indirectly that which they erroneously assumed they could not do directly.

The question of what preclusive effect, if any, the arbitration proceedings might have is not yet before us, however, and we do not decide it. The collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed, of course, and we therefore have no need to consider now whether the analysis in *McDonald* encompasses this case. Suffice it to say that in framing preclusion rules in this context, courts shall take into account the federal interests warranting protection. As a result, there is no reason to require that district courts decline to compel arbitration, or manipulate the ordering of the resulting bifurcated proceedings, simply to avoid an infringement of federal interests.

Finding unpersuasive the arguments advanced in support of the ruling below, we hold that the District Court erred

in refusing to grant the motion of Dean Witter to compel arbitration of the pendent state claims. Accordingly, we reverse the decision of the Court of Appeals insofar as it upheld the District Court's denial of the motion to compel arbitration, and we remand for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, concurring.

I join the Court's opinion. I write separately only to add a few words regarding two issues that it leaves undeveloped.

The premise of the controversy before us is that respondent's claims under the Securities Exchange Act of 1934 are not arbitrable, notwithstanding the contrary agreement of the parties. The Court's opinion rightly concludes that the question whether that is so is not before us. *Ante,* at 216, n. 1. Nonetheless, I note that this is a matter of substantial doubt. In *Wilko* v. *Swan,* 346 U. S. 427 (1953), the Court held arbitration agreements unenforceable with regard to claims under § 12(2) of the 1933 Act. It relied on three interconnected statutory provisions: § 14 of the Act, which voids any "stipulation . . . binding any person acquiring any security to waive compliance with any provision" of the Act; § 12(2), which, the Court noted, creates "a special right to recover for misrepresentation which differs substantially from the common-law action"; and § 22, which allows suit in any state or federal court of competent jurisdiction and provides for nationwide service of process. 346 U. S., at 431, 434–435; 15 U. S. C. §§ 77n, 77*l*(2), 77v.

*Wilko*'s reasoning cannot be mechanically transplanted to the 1934 Act. While § 29 of that Act, 15 U. S. C. § 78cc(a), is equivalent to § 14 of the 1933 Act, counterparts of the other two provisions are imperfect or absent altogether. Jurisdiction under the 1934 Act is narrower, being restricted to the federal courts. 15 U. S. C. § 78aa. More important, the cause of action under § 10(b) and Rule 10b–5, involved here,

is implied rather than express. See *Herman & MacLean* v. *Huddleston,* 459 U. S. 375, 380, and nn. 9, 10 (1983). The phrase "waive compliance with any *provision of this chapter*," 15 U. S. C. § 78cc(a) (emphasis added), is thus literally inapplicable. Moreover, *Wilko*'s solicitude for the federal cause of action—the "special right" established by Congress, 346 U. S., at 431—is not necessarily appropriate where the cause of action is judicially implied and not so different from the common-law action.*

The Court has expressed these reservations before. *Scherk* v. *Alberto-Culver Co.,* 417 U. S. 506, 513–514 (1974). I reiterate them to emphasize that the question remains open, and the contrary holdings of the lower courts must be viewed with some doubt.

The Court's opinion makes clear that a district court should not stay arbitration, or refuse to compel it at all, for fear of its preclusive effect. And I can perceive few, if any, other possible reasons for staying the arbitration pending the outcome of the lawsuit. Belated enforcement of the arbitration clause, though a less substantial interference than a refusal to enforce it at all, nonetheless significantly disappoints the expectations of the parties and frustrates the clear purpose of their agreement. In addition, once it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. While the impossibility of the lawyers being in two places at once may require some accommodation in scheduling, it seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course. And while the matter remains to be determined by the District Court, I see nothing in the record before us to indicate that arbitration in the present case should be stayed.

---

*The 1934 Act does explicitly provide a private right of action to victims of certain illegal conduct. See §§ 9, 16, 18, 15 U. S. C. §§ 78i, 78p, 78r. None of those sections is relied on by respondent.