MADDOX, Justice.
The issue in this case is whether the trial court erred in staying the plaintiff’s case pending arbitration of his claims.
*365 Richard Alexander allegedly lost approximately $30,000 in the stock market on “Black Monday,” October 17, 1987. He sued his broker, Jeffrey L. Howard of Prudential-Bache Securities, Inc., and Prudential-Bache for not limiting his losses to $7,500 by implementing a “stock loss program,” which Alexander alleges is a mechanism that would have involved a sale of his stocks before the prices dropped below a certain level. Prudential-Bache and Howard claim that they do not know what a “stock loss program” is. On August 17, 1987, Howard had sent Alexander a letter stating that “our stock investment strategy includes investing of $60,000 into stock positions allowing a maximum of $7500 in losses in these positions.” The defendants assert that they were suggesting that Alexander invest in options, particularly puts,[1] in order to minimize losses, and that in the week just prior to Black Monday, Howard explicitly discussed put options with Alexander as a means for reducing any possible losses. Alexander chose not to do so and adopted a “wait and see” attitude. The defendants allege that after Black Monday Alexander told Howard that he regretted not taking the advice on the puts. Alexander claims that he never made any of the above statements and that he never discussed puts with the defendants. It is undisputed that only Alexander had the authority to make investment decisions regarding the purchase or sale of any securities in his account and that the defendants could not trade any securities for Alexander’s account without his express permission; the defendants only made suggestions to Alexander regarding his security investments.
The only signed agreement between the parties is an option agreement containing an arbitration clause; this agreement was signed on July 6, 1987, and contained the following language:
“Except for any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws, any claim or dispute between us, or initiated by either of us, relating to the purchase, sale, handling, execution or endorsement of puts and calls for my account, shall be arbitrated in accordance with the rules of the exchange on which the transaction giving rise to the claim was executed, or in accordance with the rules of the New York Stock Exchange Inc. or the NASD if the put or call is not traded on a national securities exchange.”
Prudential-Bache moved to have the case stayed pending arbitration; the trial court granted that motion.
Now, Alexander seeks a writ of mandamus directing the trial court to vacate its order staying his lawsuit pending arbitration, and he claims that his suit involves only his “stock account,” on which he says he never signed anything, including an arbitration clause. However, Alexander does not have a “stock account” with Prudential-Bache; he has only an account that includes stocks, options, bonds, and precious metals, and he has historically traded in all those investments, including options, through that one account.
As this Court has stated before, a petition for a writ of mandamus is the proper means to test a trial court’s granting of a motion to arbitrate or the granting of a stay pending arbitration.[2] See Ex parte Thomson McKinnon Sec., Inc., 517 So.2d 614 (Ala.1987), and Ex parte Warrior Basin Gas Co., 512 So.2d 1364 (Ala. *366 1987). The standard for our review of a petition for writ of mandamus involving a stay pending arbitration is whether there is a clear showing that the trial court abused its discretion. Ex parte McKinney, 515 So.2d 693 (Ala.1987).
The only written contract between the parties includes an arbitration clause, and it is clear that arbitration is highly favored in investment settings and that all presumptions are to be in favor of arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); McKinney, supra. Agreements to arbitrate must be rigorously enforced. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242-43, 84 L.Ed.2d 158 (1985).
The options agreement signed by Alexander clearly calls for arbitration of “any dispute or claim ... relating to the purchase, sale, handling, execution or endorsement of puts or calls for my ac-count_” (Emphasis added.) Alexander had only a general account with the defendants; he did not have a “stock account,” an “options account,” a “bond account,” or any other kind of separate account for any particular kind of security that he traded. Thus, the only question that the trial court needed to resolve in order to decide if arbitration was proper was whether this dispute related to “the purchase, sale, handling, execution or endorsement of puts or calls.” It is undisputed that the buying of put options is a traditional means of reducing the amount of loss when stock prices fall. While the letter from Howard to Alexander did not explicitly mention puts, it spoke of the “investing of $60,000 into stock positions allowing a maximum of $7500 in losses in these positions,” and this discussion of investing in stock positions rather than in stocks supports the argument that that letter was not an agreement involving the sale of stock to minimize losses but was a recommendation involving options. The defendants claim that they discussed puts with Alexander prior to Black Monday and that afterwards he regretted not taking their advice. Alexander claims that puts were never discussed and that the “stock loss program” was the means by which the defendants agreed to minimize his losses. Yet, it is undisputed that only Alexander had the authority to order the sale of his stock and that he never did so on Black Monday.
In light of the facts that Alexander had only a general account, which included all his securities’ transactions, that there was evidence that the dispute here did involve options, and that Alexander never gave the defendants the authority to sell his stocks in order to minimize losses, we conclude that the trial court did not abuse its discretion in holding that the arbitration clause in the options agreement was applicable to this controversy. Therefore, Alexander’s petition for writ of mandamus is denied.
WRIT DENIED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.

. "Puts" are stock options whereby the option holder can require the seller of the option to buy certain stock at a specified price. Thus, if the price of the stock decreases, the holder of the put option can force the other party to buy the stock at the higher option price, or he can sell the option itself because it will have increased in value due to the fact that it can be exercised on favorable terms.

. Due to a recent amendment to the Federal Arbitration Act, codified at 9 U.S.C. § 15, that allows an appeal from the denial of a motion to compel arbitration or from the denial of a motion for a stay pending arbitration, this Court has held that an appeal within 42 days of such a denial is now the proper means for having such a denial reviewed. Ex parte A.G. Edwards & Sons, Inc., 558 So.2d 358 (Ala.1990).