**Larry NEWTON, et al., Plaintiffs,**

**v.**

**SNAP–ON TOOLS CORPORATION, Defendant.**

**Civ. A. No. 90–517.**

United States District Court,
E.D. Kentucky,
at Lexington.

Dec. 4, 1991.

Robert L. Elliott, Joe C. Savage, Savage Garmer & Elliott, P.S.C., Lexington, Ky., for plaintiffs.

Robert E. Currie and Peter Wilson, Latham & Watkins, Cota Mesa, Cal., E. Lambert Farmer, Jr., Keith Moorman, Brown Todd & Heyburn, Lexington, Ky., for defendant Snap–On Tools Corp.

## MEMORANDUM OPINION

FORESTER, District Judge.

### I. INTRODUCTION

This matter is before the court on the Defendant's motion to compel John David Herrington and John Williams, two of the Plaintiffs herein, to submit their claims against the Defendant to arbitration, pursuant to the terms of a Termination Agreement signed by Herrington and Williams on August 15, 1988.

The record reflects that Plaintiffs Herrington and Williams filed a response in opposition to Defendant's motion to compel arbitration, and the Defendant filed a reply thereto. Subsequently, the court permitted Plaintiffs Herrington and Williams to file a Supplemental Reply Memorandum regarding the motion to compel, to which the Defendants have responded. The motion to compel was heard on September 16, 1991, and taken under advisement; thus, is it ripe for consideration.

### II. FACTUAL BACKGROUND

A review of the complaint indicates that each of the six Plaintiffs, Larry Newton,

Joe Crump, John David Herrington, John Williams, Greg Curtis, and Steven Harp, at various times had a franchise to distribute Snap–On Tools. However, at various times, each Plaintiff subsequently chose to terminate his respective franchise to sell Defendants' products.

In their complaint Plaintiffs allege that they were fraudulently induced to enter into their respective franchise agreements because the Defendant misrepresented to them that (1) every Snap–On dealer's territory was the same size, (2) there were between 200 and 250 potential customers within each territory, (3) Snap–On dealers typically earn high incomes, and (4) investing substantial sums of money towards a Snap–On dealership was risk-free because the inventory purchased would cover the investment. Plaintiffs' complaint also includes a claim for intentional infliction of emotional distress and alleges violations of the Kentucky Business Opportunities Act and the Kentucky Consumer Protection Act.

It appears that when each of the Plaintiffs decided to terminate his franchise agreement with the Defendant, he would return any remaining inventory to the Defendant, at which time he would sign a Termination Agreement. Not all of the Termination Agreements signed by each of these six Plaintiffs contained the same provisions. The Termination Agreements signed by Plaintiffs Herrington and Williams on August 15, 1988, contained the following provision regarding arbitration:

6. This Agreement extends to all agents, heirs, employees and officers of either party to this Agreement. It is effective as of the above date and it supersedes any and all prior agreements, which are now cancelled. If any dispute arises over the terms of this Agreement, the parties will submit to final and binding arbitration as the sole method of resolving the controversy. The request for arbitration must be filed in writing within one (1) year of the above date or all claims, known or unknown, are forever waived. The rules of the American Arbitration Association shall apply, and the terms of this Agreement shall govern. The prevailing party shall be awarded reasonable costs and fees.

## III. THE MOTION TO COMPEL ARBITRATION

As grounds for its motion to compel Plaintiffs Herrington and Williams to submit their claims to arbitration, Defendant relies on the plain above-quoted language contained in the Termination Agreement, the Federal Arbitration Act, 9 U.S.C. §§ 1–14, and applicable case law.

### A. *The Federal Arbitration Act*

9 U.S.C. § 2 concerns the validity, irrevocability, and enforcement of arbitration agreements. It states:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Thus, the general rule is that arbitration agreements are valid, irrevocable, and enforceable.

9 U.S.C. § 3 addresses the staying of proceedings containing issues that should be referred to arbitration. It states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the

stay is not in default in proceeding with such arbitration.

Section 3 clearly and unequivocally states that whenever there is an issue that is subject to arbitration, if one of the parties timely requests arbitration, the district court must stay the action and refer the issue to arbitration.

## B. *Applicable case law*

The general rule seen from the case law interpreting the Federal Arbitration Act verifies that absent equitable or other legal reasons, a district court usually has no discretion regarding a motion to compel arbitration of an arbitrable issue. For example, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the United States Supreme Court stated,

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

*Id.* at 218, 105 S.Ct. at 1241. Additionally, if there is any doubt as to whether a claim is subject to arbitration, it must be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

Moreover, the court is cognizant that in dealership contracts containing arbitration clauses similar to the arbitration clause at issue herein, several cases have held that such arbitration clauses in dealership-related disputes cover all dealership-related disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), which compelled arbitration for all dealership disputes pursuant to a clause covering "all disputes, controversies or differences which may arise ... out of or in relation to" the dealership agreement. *Id.* at 624, n. 13, 105 S.Ct. at 3352, n. 13. *See also Southland Corporation v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), which compelled arbitration of all fraud and contract claims based on a similar arbitration clause. *Id.* at 15, n. 7, 104 S.Ct. at 860, n. 7.

## C. *Plaintiffs' response to the motion to compel arbitration*

In response to Defendants' motion to compel arbitration, the Plaintiffs argue that by reason of the Defendant's fraud, undue influence, duress, and a lack of consideration for entering into the Termination Agreement, their claims should be resolved by the court rather than by arbitration.

## IV. DISCUSSION

It appears from Plaintiffs' response that the Plaintiffs are trying to come within the exception to the mandate to compel arbitration where "the claim is fraud in the inducement of the arbitration clause itself." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). The United States Supreme Court in *Prima Paint Corporation* explained this narrow exception as follows:

> ... Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider fraud in the inducement of the contract generally.

*Id.* at 403–404, 87 S.Ct. at 1806.

Thus, in analyzing the motion to compel arbitration, it is necessary to consider the claims of Herrington and Williams. If they are claiming that they were fraudulently induced to agree to the arbitration clause (Paragraph No. 6 of the Termination Agreement), then this court may proceed to adjudicate it; however, on the other hand, if they are claiming that they were fraudulently induced to enter into the contract generally, then this court has no discretion to consider their claims.

In their complaint Plaintiffs allege that the Defendant defrauded them into becoming a franchisee for Snap–On Tools by misrepresenting to them that (1) every Snap–

On dealer's territory was the same size, (2) there were between 200 and 250 potential customers within each territory, (3) Snap–On dealers typically earn high incomes, and (4) investing substantial sums of money towards a Snap–On dealership was risk-free because the inventory purchased would cover the investment. Plaintiffs also have claims for intentional infliction of emotional distress and violations of the Kentucky Business Opportunities Act and the Kentucky Consumer Protection Act.

█ Thus, it is clear that Plaintiffs are claiming in general that they were fraudulently induced (1) to become a franchisee for Snap–On Tools, and (2) to enter into the Termination Agreement. The record does not support the premise that Plaintiffs' claims go only to the arbitration clause itself. In fact, Plaintiffs concede that they did not even read the Termination Agreement.

Therefore, the court concludes that Plaintiffs do not fit within the *Prima Paint* exception to the general rule requiring arbitration because the fraud of which they complain goes to their general agreements with the Defendant, rather than to the arbitration clause. This conclusion is supported by *Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir.1990), a case presenting claims similar to the present action. In *Arnold* the plaintiff argued that the arbitration clause should not be enforced because the clause was fraudulently induced in furtherance of a broader fraudulent scheme. However, the *Arnold* Court concluded that plaintiff's claims went to the formation of the contract in general and not to the arbitration clause itself. Therefore, the *Arnold* Court concluded that arbitration was required. 920 F.2d at 1281.

Plaintiffs contend that the court should follow a decision by the United States District Court for the Northern District of Ohio, *Wasil v. Snap–On Tools Corporation*, 5:90 CV 1730; however, *Wasil* is on appeal to the Sixth Circuit (Appeal No. 91–3381), and is not a final decision. Therefore, the court declines to follow *Wasil.*

The Defendant submits that the better line of reasoning is seen in the more recent decision rendered on August 8, 1991, from the United States District Court for the Southern District of Illinois, *McCall v. Snap–On Tools Corporation*, Civil Action No. 91–4082–JLF, 1991 WL 328468. *McCall* also declined to follow *Wasil.*

While the court is bound to follow neither *Wasil* nor *McCall*, the court is of the opinion that *McCall* expresses reasoning that is consistent with *Prima Paint* and *Arnold*, which is controlling authority herein.

## V. CONCLUSION

Based on the express language contained in the Termination Agreements at issue herein, the Federal Arbitration Act, and the relevant and controlling authorities, *Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra*, and *Arnold v. Arnold Corp., supra*, the court is of the opinion that Defendant's motion to compel arbitration, pursuant to numerical paragraph 6 of the Termination Agreement, of the claims of Plaintiffs Herrington and Williams should be granted and that the claims of Herrington and Williams should be stayed pending arbitration.