JUSTICE WEBER
dissents as follows:
I respect the majority opinion in its expression of the deeply held conviction that arbitration of the type expressed in the contract in this case should not be enforced in Montana and thereby deprive the parties of access to the court system. The answer to such a judicial approach was stated by the United States Supreme Court in Volt Info. Sciences v. Bd. of Trustees (1989), 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488, 497, in which the United States Supreme Court stated:
The Act [Federal Arbitration Act] was designed “to overrule the judiciary’s longstanding refusal to enforce agreements to arbitrate,” ... and place such agreements “upon the same footing as other contracts,” ... Section 2 of the Act therefore declares that a *386 written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” (Citations omitted.)
I specifically disagree with the majority opinion’s refusal to enforce the agreement to arbitrate in the present case.
Issue I
As stated in the majority opinion: Based on conflict of law principles, is the franchise agreement entered into between the Casarottos and DAI governed by Connecticut law or Montana law?
I point out that the issue as stated by the parties essentially was whether an out-of-state corporation can avoid Montana Arbitration Act’s conspicuous notice requirement by claiming preemption under the FAA?
The majority opinion refers to this Court’s 1991 case of Emerson v. Boyd. In determining whether a contract dispute arose on an Indian reservation, that case adopted language from R.J. Williams Co., a Ninth Circuit case with regard to the factors to be used to determine whether an action did arise on the reseivation. In contrast to the present case, Emerson v. Boyd did not contain an agreed choice of law as is present in this case. I do not find this to be appropriate authority.
The majority opinion on this issue concludes that the Montana Legislature had determined that its citizens are entitled to notice before entering into an agreement which will limit their future resolution of disputes to a procedure inconvenient, expensive and devoid of procedural safeguards — and further concludes that the notice requirements of § 27-5-114, MCA, established a fundamental public policy in this State which is contrary to the policy of the Connecticut law. On the basis of those conclusions, the majority opinion further concludes that the law of Montana governs. I do not agree with that conclusion.
The key parts of § 27-5-114, MCA, which apply to this issue are the following:
Validity of arbitration agreement — exceptions. (1) A written agreement to submit an existing controversy to arbitration is valid and enforceable except upon such grounds as exist at law or in equity for the revocation of a contract.
(4) Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters on the first *387 page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration. (Emphasis supplied.)
Our question then becomes whether the contract here is subject to “arbitration pursuant to this chapter” so that the notice must be typed in underlined capital letters on the first page of the contract. Two specific paragraphs of the contract are controlling here. Section 10(c) of the contract stated in pertinent part:
Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut,
Section 12 of the agreement further stated:
12. This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut and contains the entire understanding of the parties. Other than the representations contained in the Agreement, the Offering Circular and advertising materials of the Franchisor, no other representations have been made to or relied upon by the Franchisee except as set forth below: (None are set forth)
When the foregoing contract provisions are compared to subsection (4) of § 27-5-114, MCA, it is apparent that these contract provisions do not fit within the statute. There is no statement in the Franchise Agreement which specifies that the contract is subject to arbitration pursuant to Montana law or to the Uniform Arbitration Act as enacted in Montana under §§ 27-5-111 to 115, MCA.
I conclude that the contract provisions are controlling in this instance and that the contract between the parties is not by its terms subject to Montana law or arbitration under Montana law. In fact the reverse is true. As above specified, the agreement requires that the commercial rules of the American Arbitration Association shall be applied in any arbitration, and also provides that the agreement is governed by and construed under the laws of the State of Connecticut. This clearly rebuts any suggestion that this particular contract is subj ect to arbitration pursuant to the laws of the State of Montana and in particular § 27-5-114, MCA. I therefore conclude that the notice requirement of § 27-5-114, MCA, does not in any way establish a fundamental public policy which is applicable to the present contract.
I further point out that the reference to Restatement (Second) of Conflict of Laws, § 188 (1971), is applicable only in the absence of an *388 “effective” choice of law and I conclude there was such an effective choice of law in the present case.
Issue II
If the contract is governed by Montana law, is the notice requirement of § 27-5-114(4), MCA, of Montana’s Uniform Arbitration Act, preempted by the Federal Arbitration Act found at 9 U.S.C. § 1-15 (1988)?
The majority opinion quotes the following from the 1987 United States Supreme Court opinion of Perry v. Thomas:
... Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. ... Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce... We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law. ... (Emphasis supplied.)
The affidavit of the vice president of DAI establishes without contradiction that the present agreement to arbitrate is part of a contract in interstate commerce:
5. Before July 1991, DAI was a corporation organized under the laws of the State of Connecticut, with a principal place of business at 325 Bic Drive, Milford, CT 06460. On July 1, 1991, DAI of Florida merged with DAI of Connecticut, leaving DAI of Florida as a surviving corporation.
6. DAI has sold a total of 8500 Subway franchises in the United States and estimates that there are approximately 7400 stores in operation world wide.
Clearly the present agreement to arbitrate is part of a contract evidencing interstate commerce so the Federal Arbitration Act is applicable.
The majority opinion analyzes the United States Supreme Court’s decision in Volt and from that concludes that the nature of the inquiry is whether Montana’s notice requirement under § 27-5-114(4), MCA, would undermine the goals and policy of the FAA and further concludes it does not. I disagree with that analysis of Volt.
In Volt, Volt petitioned the California court to compel arbitration of a dispute and the defendant moved to stay arbitration pursuant to California law. The California statute permitted the court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it. The *389 California court stayed the arbitration proceedings pending the outcome of the litigation. In considering whether the California code section in question was preempted by the FAA, the United States Supreme Court stated:
The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. ... But even when congress has not completely displaced state regulation in an area, state law may nonetheless be preempted to the extent that it actually conflicts with federal law — that is, to the extent that it “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” ... The question before us, therefore, is whether application of Cal. Civ. Proc. Cod. Ann. § 1281.2(c) to stay arbitration under this contract in interstate commerce, in accordance with the terms of the arbitration agreement itself, would undermine the goals and policies of the FAA. We conclude it would not.
... Accordingly, we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so. See id., at 219, 84 L.Ed.2d 158, 105 S.Ct. 1238. (The Act “does not mandate the arbitration of all claims”), nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms ... (Citations omitted.) (Emphasis supplied.)
Volt, 489 U.S. at 477-78, 109 S.Ct. at 1255, 103 L.Ed.2d at 499-500. The court further stated and concluded:
Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit... Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward.
Volt, 489 U.S. at 479, 109 S.Ct. at 1256, 103 L.Ed. at 500. It is essential to keep in mind that the key holding of Volt as expressed by the United States Supreme Court was that the agreement to arbitrate should be enforced according to its terms — and that allowed application of the California law which provided for the stay in proceedings where other parties besides the arbitration parties were involved in the case. That *390 conclusion does not assist the majority opinion. The rationale of the Volt decision in the present case would require enforcement of the contract as agreed upon by the parties — which would require application of the American Arbitration Association rules as well as the laws of the State of Connecticut. I conclude that the contract here should be enforced to require application of the American Arbitration Association Rules and the laws of the State of Connecticut under Volt.
In addition to the conclusion reached under Volt, I will discuss several cases which have concluded that a statutory provision similar to Montana’s statutory requirement of a statement in capital letters on page one of a contract is in conflict with the Federal Arbitration Act and therefore not enforceable. In David L. Threlkeld and Co. v. Metallgesellschaft Ltd. (2nd Cir. 1991), 923 F.2d 245, Threlkeld asserted that Vermont law voided any arbitration agreement which does not have a specific acknowledgement of arbitration signed by both parties and where the agreement to arbitrate has not been displayed prominently in the contract. The circuit court acknowledged that Threlkeld was correct in asserting that the contracts did not comply with the rigorous Vermont standard. The circuit court then concluded that the Vermont statute is preempted by federal law and stated:
Because federal arbitration law governs this dispute, we must determine whether the Vermont statute is sufficiently consistent with federal law that the two may peacefully coexist. ... The First Circuit has recently held that restrictive provisions similar to those found in the Vermont statute are preempted by federal law.
We agree with the First Circuit that state statutes such as the Vermont statute directly clash with the Convention and with the Arbitration Act because they effectively reincarnate the former judicial hostility towards arbitration. Accordingly we hold that the Convention and the Arbitration Act preempt the Vermont statute, and that the ... arbitration provisions, as drafted, are not enforceable. (Emphasis supplied.)
Threlkeld, 923 F.2d at 250. Threlkeld is clear authority for concluding that the Montana statute directly clashes with the Federal Arbitration Act and therefore is not enforceable.
In a similar manner, Bunge Corp. v. Perryville Feed and Produce (Mo.1985), 685 S.W.2d 837, addresses a similar issue. As pointed out by the Missouri court in Bunge, the Missouri statute is based on the *391 Uniform Arbitration Act (as is the Montana statute) and contains a provision that each contract shall include a statement in 10 point capital letters which reads substantially as follows: THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. The Missouri Supreme Court then stated:
It is clear that § 435.460, if applied to this case, seeks to impose a requirement for contracts to arbitrate which is in addition to the requirements of the Federal Arbitration Act. All that is apparently required under that act is contractual language and format sufficient for an ordinarily written contract. ... If the Missouri statute applies, then a commercial contract sufficient under federal law would he in violation.
There is a manifest violation of the supremacy clause if our statute is so applied. The Federal Arbitration Act was passed by Congress pursuant to its power to regulate interstate commerce ... Any requirement of state law which adds a burden not imposed by Congress is in derogation of the Congressional power, and pro tanto invalid. A very recent case so holding is Southland Corp. v. Keeting ...
We do not hold that the Missouri statute is unconstitutional. We simply hold that it may not be applied to defeat the arbitration provision of a contract which is within the coverage of the federal statute. ... (Citations omitted.) (Emphasis supplied.)
Bunge, 685 S.W.2d at 839. The Bunge conclusion is directly applicable to our present case. If our Montana statute applies to the present case, then a commercial contract sufficient under federal law would be in violation of the Montana statute even though it meets the requirement of the Federal Arbitration Act. As a result, even if we accept the majority opinion conclusion that the Montana code section applies, I would hold that Montana law may not be applied to defeat the arbitration principles of a contract which is clearly within the coverage of the Federal Arbitration Act.
The District Court held that the Federal Arbitration Act required that the present suit should be stayed until the arbitration has been held in accordance with the terms of the agreement. I would affirm that holding.
*392 CHIEF JUSTICE TURNAGE concurs in the foregoing dissent.