CARLTON, J.,
Dissenting.
¶ 15. I agree with the majority that Telapex Networks, Inc. (Telapex), and Nikki Niolet entered into a valid binding arbitration agreement. However, I disagree with the majority’s conclusion that Niolet’s claims fall outside the scope of the arbitration agreement she signed.[2] Niolet concedes that the arbitration agreement she entered into was a valid agreement and that she is bound by the Dispute Resolution Program (DRP). Thus, I would find that Niolet must submit any claims against persons or entities listed in the agreement to arbitration in accordance with the DRP if the claims “touch” the matters covered by the contract for dispute resolution with Telapex. Because I respectfully conclude that Niolet’s civil tort claims fall within the scope of her DRP, embracing in its plain text all matters directly or indirectly related to her employment, I would therefore affirm the trial court’s granting of Rice’s motion to compel arbitration. I reached this conclusion after studying the matters within the scope of the agreement, persons or entities covered by the scope of the agreement, and any exclusions of matters otherwise included in the plain language of the contract.
¶ 16. Justice Randolph, writing for the supreme court in Century 21 Maselle and *36 Assocs., Inc. v. Smith, 965 So.2d 1031, 1036(¶ 7) (Miss.2007) (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), found a presumption exists in favor of arbitration in the disposition of motions to enforce arbitration agreements. Justice Randolph explains in Century 21 Maselle that the Federal Arbitration Act “leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed ... absent a ground for revocation of the contractual agreement.” Id. at (¶ 8) (quoting Dean, Witter, Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). As stated above, Niolet concedes that she entered into a valid, binding arbitration agreement. Further, our supreme court has held that “[d]oubts as to the availability of arbitration must be resolved in favor of arbitration.” IP. Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 107(¶ 46) (Miss.1998) (citing Moses H. Cone Memorial Hosp., 460 U.S. at 24-25, 103 S.Ct. 927). Consequently, “[u]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.” Id. (citations omitted). I find the language of Niolet’s arbitration agreement susceptible of the interpretation that her intentional tort claims are within the scope of the agreement.
¶ 17. Niolet’s arbitration agreement does not exclude either torts or intentional torts, nor does the arbitration agreement exclude the specific civil tort claims at issue here, assault and battery. Alternatively, the agreement embraces all matters directly or indirectly related to her employment, including the claims at issue here against a supervisor. The arbitration agreement contains the following language:
In consideration of Telapex, Inc. considering your application for employment you and Telapex, Inc. each agree that, in the event either party (or its representatives, successors or assigns) brings an action in a court of competent jurisdiction relating to your recruitment, employment with, or termination of employment from your employer, the plaintiff in such action agrees to waive his, her or its light to a trial by jury, and further agrees that no demand, request or motion will be made for trial by jury.
In consideration of the Company considering you for employment, you and your employer further agree that, in the event that you, anyone on your behalf or your employer seek relief in a court of competent jurisdiction for a dispute covered by this Agreement, your employer or you may, at any time within sixty (60) days of the service of a complaint by one party against the other at either part/s option, require all or part of the dispute to be arbitrated by one arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. You and your employer agree that the option to arbitrate any dispute is governed by the Federal Arbitration Act, and enforceable to the fullest extent permitted by federal and state law. You understand and agree that, if either you or your employer exercises its option, any dispute arbitrated will be heard solely by an arbitrator, and not by a court. The only exception to this agreement is your employer’s right to seek equitable and injunctive relief to enforce the provisions of an employment, confidentiality, trade secrets, noncompetition *37 or similar agreement between your employer and you.

This pre-dispute resolution agreement will cover all matters directly or indirectly related to your recruitment, potential employment, or possible termination of employment, including, but not limited, to, claims involving laws against discrimination whether brought under federal and/or state law, and/or claims involving and/or against the Company, employees, supervisors, officers, and/or directors of Telapex, Inc. or any affiliates, as ivell as any other common laiv claims for wrongful discharge or other similar claims. This pre-dis-pute resolutioii agreement does not cover claims under unemployment or workers’ compensation laws or- the National Labor Relations Act.

The right to a trial, and to a trial by jury, is of value. You may wish to consult an attorney prior to signing Appendix “2” attached hereto. If so, take a copy of this Program and all attached appendix materials with you. However, you will not be considered for or offered employment if Appendix “2” is not signed and returned by you.
This Agreement does not affect your ability to seek relief from or through the Equal Employment Opportunity Commission.
This Agreement does not create a contract of employment for a definite time, and does not in any way alter your right or your employment relationship at any time for any lawful reason or for no reason.
(Emphasis added).
¶ 18. In evaluating whether Niolet’s claims fall within the scope of the agreement, we must study the plain language of the agreement and review legal precedent. Where no ambiguity exists in contract language, we must accept the plain meaning of the contract language as the intent of the parties. I.P. Timberlands Operating Co., 726 So.2d at 108(¶50). See also Smith Barney, Inc., 775 So.2d at 726(¶ 13). The majority points out the broad language of the arbitration agreement into which Niolet entered. The agreement covered “all matters directly or indirectly related” to her employment with Telapex. Because of the broad language in the agreement, precedent requires only that Niolet’s claims against Rice “touch” the matters covered in the contract for the dispute to be arbitrable and within the scope of the arbitration agreement. MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 176(¶ 25) (Miss.2006). With respect to the scope of the matters encompassed, Niolet’s arbitration agreement covers “all matters directly or indirectly related to” her employment; the arbitration agreement does not require that the dispute “arise out of” her employment with Telapex. Now, I will address who the DRP covers and any exclusions of claims or matters that would otherwise be encompassed.
¶ 19. With respect to the persons and entities encompassed, the arbitration agreement Niolet signed when she applied for employment covers all matters directly or indirectly related to recruitment, employment, and termination, including claims involving or against not just the company, but also employees, directors, officers, and supervisors, such as Rice. Regarding the scope of claims encompassed in the arbitration agreement, I note the language of the arbitration agreement contains no language limiting the agreement or excluding any particular matters, torts, or civil claims if such matters fall within the broad scope of the agreement. To the contrary, as evaluated above, the broad scope of the plain language of the arbitration agreement at issue embraces all matters directly or indirectly related to Niol- *38 et’s employment to include claims against supervisors. As Niolet pled them, the claims at bar more than “touch” the plain language of the broad agreement between Telapex and Niolet. Therefore, I conclude that the language of the arbitration agreement to be so broad as to encompass Niol-et’s civil tort claims at issue here against her supervisor, Rice, because the claims not only touch, but also relate to her employment directly or indirectly and fall within the scope of the plain language of her arbitration agreement.[3] See Smith Barney, Inc., 775 So.2d at 726(¶ 13) (broadly construing arbitration language “any controversy or claim arising out of or related to this agreement”); see also Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir.1998) (holding that “[b]road arbitration clauses ... are not limited to claims that literally ‘arise under the contract,’ but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute”).
¶ 20. Precedent requires that any doubt concerning the scope of an arbitration clause be resolved in favor of arbitration. I.P. Timberlands Operating Co., 726 So.2d at 107(¶ 46) (citing Moses H. Cone Memorial Hosp., 460 U.S. at 24-25, 103 S.Ct.927). However, no need exists in this case to look to the aid of such a rule of construction because in my view, the language in the arbitration agreement before the court opens no door to confusion or ambiguity. I conclude based on my reading of the plain language of the arbitration agreement, and also a reading of the DRP as a whole, that the embracing scope of the agreement at issue encompasses Niolet’s claims against Rice arising out of incidents while she worked under his supervision and in the performance of business travel and duties at Telapex. However, even if confusion existed regarding the scope of the coverage of the DRP, any doubt concerning the scope of an arbitration clause must be resolved in favor of coverage. Id.
¶ 21. I find the supreme court’s holding in Doleac instructive in the case at bar. In that case, Real Estate Professionals, LLC, sued Barry Doleac and his business for breach of contract, tortious interference with business relations, trespass to chattels, and conversion. Doleac v. Real Estate Professionals, LLC, 911 So.2d 496, 498(¶ 2) (Miss.2005). Doleac filed a motion to dismiss the complaint and compel arbitration. Id. at 500(¶ 12). The chancery court denied the motion to compel arbitration. Id. The case proceeded to trial before the chancellor, who found in favor of Real Estate Professionals. Id. at (¶ 13). Doleac appealed, arguing that the chancellor erred in denying his motion to dismiss and to compel arbitration. Id. at (¶ 14).
¶ 22. Real Estate Professionals argued that the arbitration clause at issue contained narrow language and did not include tort claims. Id. at 504(1127). The arbitration clause applied to “any dispute under this agreement.” Id. The supreme court held that the intentional tort claims *39 arose out of the contracts between Real Estate Professionals and Doleac and should be referred to arbitration in accordance with the contract. Id. Likewise, the language in the DRP in this case is analogous to the language of the agreement in Doleac. However, the language in the case before us presents arguably even broader language than that evaluated in Doleac. The DRP that Niolet signed requires that all matters that relate directly or indirectly to employment, including claims against the company, employees, supervisors, officers, and directors, be submitted to arbitration. Hence, in applying the precedent of Doleac to the instant case, the language of the DRP before us, which embraces all matters directly or indirectly related to employment, includes Niolet’s civil tort claims against her supervisor. Niolet’s tort claims against her supervisor directly or indirectly “relate” to her employment and fall within the scope of the arbitration agreement with Telapex.
¶ 23. In further study of the scope of the broad language of the arbitration agreement before us, we note that the supreme court explained the distinction between broad and narrow language in arbitration agreements as follows:
Courts often characterize arbitration language as either broad or narrow. Broad arbitration language governs disputes “related to” or “connected with” a contract, and narrow arbitration language requires arbitration of disputes that directly “arise out of’ a contract. Because broad arbitration language is capable of expansive reach, courts have held that it is only necessary that the dispute “touch” matters covered by the contract to be arbitrable.
Horton, 926 So.2d at 176 (¶¶ 24-25) (internal citations and quotation marks omitted).
¶24. In my view, Niolet’s asserted claims more than “touch” matters covered by the arbitration agreement since the agreement clearly encompasses claims against her supervisor during the course of her employment.[4] However, I respectfully submit that if the majority possessed a sincere doubt regarding whether a question of fact existed as to whether this claim arose out of Niolet’s employment relationship with her supervisor, then the case should be remanded for an evidentiary hearing to determine whether Niolet’s claims against Rice factually “touch” the matters covered by the scope of the agreement. See Captain D’s, 963 So.2d at 1124(¶ 33) (Dickinson, J., dissenting).
¶ 25. For the above reasons, I respectfully dissent from the majority as I would affirm the judgment of the circuit court and compel arbitration.

. While I disagree with the majority’s holding that Niolet's claims fall outside the scope of the arbitration agreement, I agree with the majority’s holding that Phil Rice, as Niolet’s supervisor, could hold Niolet to the agreement, despite being a non-signatory to the agreement. See Smith Barney, Inc. v. Henry, 775 So.2d 722, 726(¶ 16) (Miss.2001) (“If the agreement, on its face, evidences a clear intent that such disputes should be arbitrated, the court is bound to uphold the intent of the parties’’); see also Cleveland v. Mann, 942 So.2d 108, 118(¶ 35) (Miss.2006) (non-signatories to arbitration agreements may be bound to arbitrate “if so dictated by the ordinary principles of contract and agency”).

. The majority relies on the Captain D’s case in its finding that Niolet's intentional tort claims fall outside the scope of her arbitration agreement. However, the agreement Niolet signed differs from the language in the arbitration agreement addressed in the Captain D’s case. The Captain D’s arbitration agreement does not contain the language contained in Niolet’s DRP. Niolet’s agreement encompassed all claims "directly or indirectly” involving employment, including but not limited to discrimination claims and claims against other employees, supervisors, officers, and directors, as well as common law claims for wrongful discharge or other similar claims. The Captain D’s agreement had no reference to claims against other employees or supervisors. Smith v. Captain D's, LLC, 963 So.2d 1116, 1120(¶ 15) (Miss.2007).

. The record reflects that Niolet filed an Equal Employment Opportunity (EEO) claim at the same time as this complaint based on the same event — Rice's assault against her. Her EEO claim further illustrates that her claims are work related.