Samuel D. CANNAVO, Plaintiff,

v.

ENTERPRISE MESSAGING SERVICES, INC., Anurag Singh and Sharada Singh, Defendants.

No. C.V. 97–10457–RGS.

United States District Court, D.Massachusetts.

Oct. 10, 1997.

Toni G. Wolfman, Kenneth S. Leonetti, Foley, Hoag & Eliot, Boston, MA, for Plaintiff.

Mark E. Schreiber, John R. Hallal, Gadsby & Hannah LLP, Boston, MA, for Defendants.

## ORDER

STEARNS, District Judge.

The report and recommendations are *adopted.* The court noting that a demand for arbitration has been filed, hereby *stays* further action on the nonarbitrable claims pending arbitration.

*(1) REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AND (2) ORDER REGARDING DEFENDANTS' MOTION TO STAY AND TO COMPEL ARBITRATION (DOCKET NO. 3)*

September 18, 1997

KAROL, United States Magistrate Judge.

Until recently, plaintiff, Samuel D. Cannavo ("Cannavo"), was President and Chief Operating Officer of defendant Enterprise Messaging Services, Inc. ("EMS"). He is also a minority stockholder in that company. He brought this suit against EMS and its majority shareholders, Anurag and Sharada Singh ("the Singhs"), claiming, *inter alia,* that, in breach of his employment agreement, he was terminated without cause and that, in breach of a separate shareholders' agreement between himself and defendants, defendants have not paid him the amount to which he is entitled for the buyback of his shares. The shareholders' agreement contains an arbitration clause; the employment agreement does not. The issue before the court is whether the present suit, which clearly asserts breaches of both the employment agreement and the shareholders' agreement, should be dismissed or stayed pending arbitration of some or all of the claims Cannavo has asserted in his verified complaint. For reasons stated below, (1) I recommend that the present suit not be dismissed, but (2) I order that the present suit be stayed for thirty days from the date on which this order becomes final, or, if defendants commence an arbitration within such thirty-day period, until completion of arbitration of claims asserted in Cannavo's verified complaint that arise under the shareholders' agreement.

## I. BACKGROUND

Cannavo began his employment with EMS (then known as Sharada Technologies, Inc.) in April 1996. At that time he signed an employment agreement with the company pursuant to which he was to receive a salary of $75,000 per year and other customary benefits for an initial term of two years, as well as shares of the company's stock pursuant to a separate shareholders' agreement that was referred to in (but not incorporated by reference into) the employment agreement. (Employment Agreement by and between Sharada Technologies, Inc. and Samuel Cannavo (the "Employment Agreement") § 3 at 2–4, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. B, Docket No. 4.) For reasons that are not relevant to the present dispute, Cannavo and EMS did not execute the shareholders' agreement until July 1996. (*See* Enterprise Messaging Services, Inc. Amended and Restated Shareholders' Agreement (the "Shareholder's Agreement") at 1, Def's Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.)

In addition to dealing with matters of compensation, the Employment Agreement also dealt with termination. It provided, in substance, that Cannavo's employment could be terminated for various specified causes, such as dishonesty, willful misconduct, insubordination, or failure to perform obligations required by the Employment Agreement. (Employment Agreement § 5.3 at 5, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. B, Docket No. 4.) It did not provide for the possibility of termination without cause, and it did not contain an arbitration clause. By its terms, it was to be governed by the laws of the State of Pennsylvania, the state in which EMS was based and the Singhs resided. (Employment Agreement § 10.1 at 10, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. B, Docket No. 4.)

The Shareholders' Agreement dealt, among other things, with the terms upon which EMS would repurchase the shares of terminated shareholders. It provided that the price EMS would pay for the shares of a terminated shareholder would be their "Agreed Value," unless the shareholder had been terminated "for cause," in which case the purchase price would be the shares' book value. (Shareholders' Agreement § 8 at 12–13, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.) Cause was specifically defined in the Shareholders' Agreement and included "the consistent, willful failure by a Share-

holder to substantially perform his duties or obligations to the Company," following a thirty-day notice and cure period. (Shareholders' Agreement § 8(a) at 12–13, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.) Since the Agreed Value of all shares was initially set at $1 million and the book value was de minimis, it made a substantial difference to a terminated shareholder whether he or she was terminated for cause within the meaning of Section 8(a) of the Shareholders' Agreement. The Shareholders' Agreement also contained an arbitration clause which, with certain exceptions not relevant to the present dispute, provided for arbitration in Philadelphia, Pennsylvania, in accordance with the rules of the American Arbitration Association, of "[a]ny disputes arising under this Agreement." (Shareholders' Agreement § 15 at 26–27, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.) Finally, like the Employment Agreement, the Shareholders' Agreement was governed by Pennsylvania law. (Shareholders' Agreement § 22 at 28, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.)

Toward the end of 1996, the relationship between Cannavo and the Singhs began to deteriorate. Cannavo alleges that the Singhs reduced his power, centralized day to day control in themselves, shut down the Boston office where he worked, and ordered him to relocate immediately to the company's facility in West Chester, Pennsylvania, despite a clear understanding at the time that he was hired that he had to remain in the Boston area to care for his disabled nephew. By letter dated March 27, 1997, a few days before Cannavo's right to certain bonus shares would have vested, EMS purported to terminate Cannavo's employment. (*See* Letter of 3/27/97 from Anurag Singh to Cannavo, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. C, Docket No. 4.) The termination letter stated that Cannavo had ignored warnings going back to January 1997 and expressly advised Cannavo that he was being terminated "for cause in accordance with Section 5.3 of the Employment Agreement . . . and Section 8(a) of the EMS Shareholders Agreement," specifically, among other things, for his "willful failure to report to work in West Chester, Pennsylvania." (*Id.*)

Cannavo had apparently seen the handwriting on the wall, however, because he filed this lawsuit in Suffolk Superior Court one month before his employment was formally terminated. In the introductory paragraph of his Verified Complaint, he alleged, *inter alia,* that the Singhs had exercised their majority control of EMS "in a manner designed . . . to effectuate the termination of his employment on terms that would entail the forfeiture of both the benefits of his employment contract with EMS and *the fair value of his equitable interest in that company,*" and he stated that he was seeking compensation and "a declaration of his rights under the *contracts* that he entered into with defendants." (Verified Compl. at 1, Pl.'s Opp. to Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 5 (emphasis added).) In the body of the Verified Complaint, Cannavo described the two separate contracts and accused defendants of deliberately taking actions intended to deprive him, among other things, of his equity interest in EMS. For example, in Paragraph 37, Cannavo avers that "[t]he Singhs have undertaken a deliberate campaign to pressure Cannavo to resign . . . or to fabricate some excuse to terminate Cannavo purportedly 'for cause' within the meaning of the employment and shareholder agreements . . . ." (Verified Compl. ¶ 37 at 12, Pl.'s Opp. to Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 5.) Further, in Paragraph 39 Cannavo accused defendants of attempting to pressure him "to relinquish his vested interest in EMS on unfair and inadequate terms," and in Paragraph 42, he demanded, among other things, compensation "under the terms of the employment and shareholders agreements to which he is a party." (Verified Compl. ¶¶ 39, 42 at 13, Pl.'s Opp. to Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 5.) Cannavo also alleged in his count for declaratory relief, among other things, that a dispute had arisen between himself and defendants with respect to the

parties' "respective rights ... under the ... shareholder agreement[ ]" and sought a declaration that he "is entitled to receive the 'Agreed Value,' within the meaning of Section 8 of the July 1996 .Amended and Restated Shareholders' Agreement...." (Verified Compl. ¶¶ 58, 59(c) at 17–18, Pl.'s Opp. to Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 5.)

Defendants timely removed the litigation to federal court on grounds of diversity of citizenship and, on March 31, 1997, moved "to dismiss or stay this action, and for an order compelling arbitration." (Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration, Docket No. 3.) In the alternative, they sought a referral of the arbitrable portions of the dispute to arbitration and a stay of the litigation pending the outcome of arbitration. (Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration at 8, 10, Docket No. 4.) Plaintiff opposes defendants' motion in its entirety; that is, he takes the position that the entire dispute should be heard in court. (*See* Pl. Opp. to Def.'s Mot. to Dismiss and/or Stay and Compel Arbitration at 12, Docket No. 5.)

## II. *DISCUSSION*

Both sides agree that resolution of this dispute turns largely on the interpretation and application of provisions of the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq.* (West 1970 & Supp.1997) ("FAA"). Before considering those provisions and the decisions construing them, however, it is helpful to sharpen the focus of the dispute by delineating certain issues about which there can be no genuine disagreement:

1. Cannavo, EMS, and the Singhs are parties to two separate agreements, one of which contains an arbitration clause and one of which does not, and neither of which incorporates the other by reference.

2. The arbitration clause in the Shareholders' Agreement unambiguously applies to "[a]ny dispute arising under" it. (*See* Shareholders' Agreement § 15 at 26–27, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.)

3. The dispute about whether Cannavo is entitled to book value or "Agreed Value" for his shares unquestionably arises under the Shareholders' Agreement, because the resolution depends entirely upon whether or not Cannavo was terminated "for cause," as expressly defined in Section 8(a)(1) of the Shareholders' Agreement (i.e., for "the consistent, willful failure by [Cannavo] to substantially perform his duties or obligations to [EMS]"). (*See* Shareholders' Agreement § 8(a)(1) at 12, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. A, Docket No. 4.)

4. To the extent Cannavo's Verified Complaint seeks a determination that Cannavo is entitled to the "Agreed Value" for his shares (and to obtain compensation for Cannavo in that amount), as it clearly does, it unquestionably raises an issue that is referable to arbitration in accordance with the express terms of the Shareholders' Agreement.

5. The dispute about whether EMS terminated Cannavo's employment in breach of the Employment Agreement unquestionably arises under the Employment Agreement, since the resolution depends entirely upon whether Cannavo was terminated for any of the reasons set forth in Section 5.3 of the Employment Agreement (*e.g.*, for "willful misconduct," insubordination, or failure to perform "obligations under th[e Employment] Agreement or any other agreement between [the parties]"). (*See* Shareholders' Agreement § 5.3 at 5, Def.'s Memo. in Supp. Mot. to Dismiss and/or Stay and Compel Arbitration, Ex. B, Docket No. 4.)

6. To the extent Cannavo's Verified Complaint seeks a determination of Cannavo's rights under the Employment Agreement (and compensation for defendants' breach thereof), as it clearly does, it unquestionably raises a dispute that is not subject to arbitration, due to the lack of an express requirement in the Employment Agreement.

7. Resolution of both the arbitrable dispute and the non-arbitrable dispute largely turns on the resolution of the same disputed issue of fact: whether, taking into account all the facts and circumstances, EMS had the right to order Cannavo to relocate to West Chester, Pennsylvania.

In other words, this is not a case, like so many others that courts have decided, in which there is a dispute about the existence or meaning of an arbitration clause, about whether the clause applies to a particular dispute or particular parties, about who should decide the issue of arbitrability, or about what to do if an arbitrable and a non-arbitrable claim are joined in a single complaint. Rather, this case raises the fundamental question of what to do if there are two contractual disputes—one clearly arbitrable and the other just as clearly not—and both turn largely on the resolution of the same disputed issue of fact.

As a preliminary matter, one may reasonably ask what are the court's options and what difference it makes as to which option is selected. The options include dismissal of the litigation and an order that the entire case be referred to arbitration; referral of the arbitrable portion of the case to arbitration, with or without a stay of the nonarbitrable portion; or denial of the motions to stay or dismiss, with or without an order mandating that the entire case proceed exclusively in court. To understand why it makes a difference which option is chosen, one must consider such things as party expectations, judicial economy and efficiency, issue preclusion, and the relationship among them.

On the most fundamental level, we must assume that, when the parties agreed that they would refer disputes under the Shareholders' Agreement, but not those under the Employment Agreement, to arbitration, they had good reasons for doing so and reasonably expected that their mutual decision would be honored. If the court orders the entire dispute to be resolved exclusively in arbitration (over Cannavo's objection) or in court (over defendants' objection), the reasonable expectations of one party or the other will be disappointed. On the other hand, principles of judicial economy and efficiency would be offended if the entire dispute or even a single issue were to proceed in arbitration while the same dispute or issue proceeded on a parallel track in court. Of perhaps even greater concern, there is a substantial likelihood that the decision of the common factual issue by the first forum to decide it would have preclusive, or at least some evidentiary or issue narrowing, effect in the other forum.[1] This would not be terribly troublesome if the winning party

**1.** This would probably be true if the issue were first decided in litigation. *See, e.g., John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 562–63 (8th Cir.1990), *cert. denied sub nom. United Food & Commercial Workers Int'l v. John Morrell & Co.*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991) (recognizing that an arbitrator has the authority to determine whether to give a prior judicial determination preclusive effect, but noting that where there is a "strong factual identity between the issue resolved by the jury and the issue addressed by the arbitrator" or both involve the same dispute, an arbitrator who rejects the jury verdict is wrongly substituting "his own brand of industrial justice"). It would also probably be true if the issue were first decided in arbitration, even more so if the arbitration award were confirmed by a court, had preclusive effect under Pennsylvania law, and otherwise reflected that the issue had been fairly and thoroughly considered. *See Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir.1997) (holding that arbitrator's award, whether or not confirmed, may be given collateral estoppel effect in federal district court suit, at least where the arbitrator has explained his findings adequately or followed procedures likely to lead to reliable findings); *Apparel Art Int'l v. Amertex Enterprises, Ltd.*, 48 F.3d 576, 585 (1st Cir.1995) (holding that "when a federal district court enters a judgment confirming an arbitration award pursuant to the

Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award"); *see also* 28 U.S.C.A. § 1738 (West 1994). Even if the arbitration award were not confirmed, it might still have preclusive, or at least an evidentiary or issue-narrowing, effect, since no federal statute or overriding federal policy appears to be implicated in this essentially private, commercial dispute. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985) (holding that "in framing preclusion rules [for arbitration decisions] ... courts shall take into account the federal interests warranting protection"); *McDonald v. City of West Branch*, 466 U.S. 284, 290, 292, 104 S.Ct. 1799, 1803, 1804, 80 L.Ed.2d 302 (1984) (holding that an arbitration award should not be given preclusive effect in a case under 42 U.S.C. § 1983 because arbitrator's decision cannot adequately protect the federal and constitutional rights at stake in a § 1983 claim); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 59, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147 (1974) (holding that arbitral decision may be admitted as evidence in Title VII suit, but the federal court should consider the employee's claim de novo, because arbitration is a "comparatively inappropriate forum for the final resolution of rights created by Title VII").

happened to be the one that had opposed adjudication in the forum that wound up issuing the controlling decision, but it would be a double blow to the losing party if it were the other way around.

With that as background, I shall turn to the applicable provisions of the FAA and to case law for answers to three related, but analytically distinct, questions posed by defendants' motion: (1) should Cannavo be compelled to arbitrate some or all of the claims he presents in his Verified Complaint; (2) should the pending suit be dismissed; and (3) assuming that Cannavo is ordered to arbitrate some of the claims he has raised, should the remainder of the litigation be stayed pending the outcome of the arbitration.

Three provisions of the FAA are relevant to these questions. They are Sections 2, 3, and 4, which provide, respectively and in pertinent part, that arbitration provisions of the type involved here "shall be valid, irrevocable, and enforceable;" that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ..., the court ... shall on application of one of the parties stay the trial of the action until such arbitration has been had ..., providing the applicant for the stay is not in default in proceeding with such arbitration;" and that "[t]he court ..., upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue ..., shall [upon the petition of the party aggrieved by another party's failure, neglect or refusal to arbitrate,] make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. §§ 2, 3, 4 (West 1970).

■ The answer to the first question is clear: defendants are entitled to an order compelling arbitration of the question of whether Cannavo was terminated "for cause" within the meaning of the Shareholders' Agreement and, therefore, whether he is entitled to "Agreed Value" or book value for his shares. This dispute arises under an arbitration agreement; the agreement is "valid, irrevocable, and enforceable" pursuant to Section 2 of the FAA; and a party to such agreement is absolutely entitled to an order

enforcing it in accordance with its terms pursuant to Section 4 of the FAA, as interpreted by the United States Supreme Court. *See Byrd,* 470 U.S. at 217, 219, 105 S.Ct. at 1241, 1242 (stating "[w]e agree ... that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums;" and "[w]e conclude ... that a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made").

■ The answer to the second question is equally clear: because the Verified Complaint raises issues under the Employment Agreement that are nonarbitrable, the present lawsuit, for the time being, at least, should not be dismissed. *See Livadas v. Bradshaw,* 512 U.S. 107, 123 n. 17, 114 S.Ct. 2068, 2078 n. 17, 129 L.Ed.2d 93 (1994) *quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). If it is determined in arbitration that Cannavo was terminated for cause within the meaning of the Shareholders' Agreement, defendants may, of course, renew their motion if they believe that such determination is dispositive of all issues in the present case.

■ This leaves for consideration the only question that merits any extended discussion: should the present suit be stayed pending arbitration?

Even without explicit statutory authority to do so, a court, in its sound discretion, may stay any case pending before it as an exercise of its inherent power to control its own docket. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983); *Landis v. North American Co.,* 299 U.S. 248, 254–255, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936). As noted, however, the command of the FAA is explicit. With one exception

discussed below, it provides, in Section 3, that the court "shall on application of one of the parties stay the trial of the action" where suit is brought "upon any issue referable to arbitration." 9 U.S.C.A. § 3. Here, suit has certainly been brought upon at least one issue referable to arbitration, namely, whether Cannavo was required to relocate to West Chester, Pennsylvania on his employer's request. Under the plain language of the FAA, therefore, it appears that the court *must* stay the pending litigation.

For two reasons, however, the matter may be less clear than it first appears. First, as the Seventh Circuit has aptly noted, based in part upon First Circuit precedent, "the cases, perhaps concerned lest the tail wag the dog, treat the question whether to stay the entire case as discretionary in cases involving both arbitrable and nonarbitrable issues." *Pryner*, 109 F.3d at 361, *citing McCarthy v. Azure*, 22 F.3d 351, 361–362 n. 15 (1st Cir. 1994). I need not decide the difficult question of whether such discretion exists even where, as here, the *identical* issue that is at the core of the arbitration (*i.e.*, whether defendants had the right to insist that Cannavo relocate to Pennsylvania) is also the central issue in the litigation. It is sufficient for present purposes to state that, even if I were not required by the FAA to stay the litigation, I have determined that it is appropriate to do so. This conclusion is based largely on consideration of two factors. First, as in *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, the decision by the arbitrator regarding defendants' authority to order Cannavo to relocate to Pennsylvania is at least "potentially preclusive" of the same issue in litigation, and, even if it does not have preclusive effect here, it may have an "evidentiary or issue-narrowing effect." *See Sevinor*, 807 F.2d 16, 20 (1st Cir.1986). The second consideration is that the dispute re-

garding the value of Cannavo's shares is very much the dog, not the tail, of this case, since the sum Cannavo is seeking for his shares is substantially larger than the amount he can reasonably expect to receive in salary and benefits, even if he prevails on his claim for breach of employment agreement.[2]

The second complicating factor is that Section 3 of the FAA itself provides that a stay shall be ordered "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C.A. § 3. Although neither party addressed this issue, it does not appear from the papers that defendants have sought to commence an arbitration. If that is so, they are arguably "in default in proceeding with such arbitration." *Id.* Accordingly, rather than "stay the trial of the action until such arbitration has been had," *id.*, I shall, at this time, order only that the litigation be stayed for thirty days from the date on which this order becomes final, to give defendants time to commence an arbitration (assuming they have not already done so). If they do so within that period, the litigation will be stayed until the arbitration has been completed.

### III. *CONCLUSION*

For all the foregoing reasons, (1) I **RECOMMEND** that the present suit not be dismissed, but (2) I **ORDER** that the present suit be stayed for thirty (30) days from the date on which this order becomes final, or, if defendants commence an arbitration within such thirty-day period, until completion of arbitration of claims asserted in Cannavo's Verified Complaint that arise under the Shareholders' Agreement.

---

2. Assuming that the forum-selection expectations of one party or the other must be disappointed, the equities also favor defendants, since Cannavo unquestionably agreed to arbitrate the issue of how much he would be paid for his shares in the event of termination and this aspect of the dispute accounts for the "lion's share" of the amount in controversy. If it were the other way around, i.e., if the share valuation dispute were trivial in comparison to the dispute concerning breach of employment contract, the case would be more troubling from an equitable standpoint, but the decision would probably be the same. *See Byrd*, 470 U.S. at 223, 105 S.Ct. at 1243 (since "courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding ... it follows that neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal court action") (emphasis in original).