**Orin BOWLBY, Plaintiff,**

v.

**CARTER MANUFACTURING CORP., Defendant.**

**No. CIV. A. 00–40081–NMG.**

United States District Court, D. Massachusetts.

March 30, 2001.

Richard A. Goren, Rubin, Hay & Gould, Framingham, MA, for Plaintiff.

Jerry H. Elmer, Goldenberg & Muri, Providence, RI, Richard A. Goren, Rubin, Hay & Gould, Framingham, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

This suit arises out of the failure of defendant, Carter Manufacturing Corp. ("Carter"), to pay plaintiff, Orin Bowlby ("Bowlby"), pursuant to the terms of an employment contract. Pending before this Court are 1) Carter's motion to stay these proceedings pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, 2) the conditional motion of Carter's president, Ahren L. Cohen ("Cohen"), to intervene (Docket No. 7), and 3) Carter's conditional motion for joinder of additional parties (Docket No. 8).

I. *Background*

Plaintiff is a New Hampshire resident. Carter is a Massachusetts corporation with its principal place of business in Bolton, Massachusetts. This Court's jurisdiction is based upon diversity of citizenship.

As of early 1998, Bowlby and Leo Nichols ("Nichols") owned 100% of the stock of Carter. Carter manufactures precision potentiometers and other controls for electronic equipment. At that time, Bowlby and Nichols sold all of their stock to Edge River's Acquisition Company, Inc. ("Edge River's"). Cohen, the president, founder and 100% shareholder of Edge River's, had formed the company for the purpose of purchasing Carter and financed 100% of that purchase.

On September 25, 1998, Cohen, Bowlby and Nichols entered into a Stock Purchase Agreement ("the Purchase Agreement"), whereby Edge River's merged with Carter and Cohen became the 100% shareholder of Carter. According to Carter, the total purchase price, including the technology, know-how and support of Carter's principals, was to be $1.65 million. Cohen was to pay Bowlby and Nichols $1.35 million for their shares of Carter. Purchase Agreement, ¶ 1(a). In addition, Bowlby received an employment contract worth $290,000 over three years and Nichols received an employment contract worth $10,800 over three months. Execution of those employment agreements by Edge River's was a condition precedent to the obligations of Bowlby and Nichols under the Purchase Agreement, Purchase Agreement, ¶ 7, and the unexecuted employment agreements were attached to the Purchase Agreement as exhibits.

At the closing, held on September 28, 1998, both Bowlby and Nichols entered into the employment contracts with Carter. Bowlby's agreement ("the Employment Agreement"), provided that he would serve as a consultant to the company for a three-year term for a total of $290,000 ($100,000 per year for the first two years and $90,000 for the third year). All such payments were to be made weekly, subject to "normal withholding". Bowlby was also entitled to certain health and pension benefits.

The following provisions of the Purchase Agreement and the Employment Agreement lie at the heart of the instant dispute. The Purchase Agreement contains the following arbitration clause:

> Any controversy arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in Boston, Massachusetts in accordance with the rules, then in effect, of the American Arbitration Association except to the extent that such rules are incon-

sistent with the provisions of this Section. In any such arbitration the burden shall be on the party making a claim to establish the amount of the loss.

Purchase Agreement, ¶ 10. The Purchase agreement also contains a choice of law provision selecting Massachusetts law:

This Agreement shall be governed by and construed and enforced in accordance with the laws of The Commonwealth of Massachusetts.

Purchase Agreement, ¶ 12(e).

The introductory paragraph of Bowlby's Employment Agreement refers to the Purchase Agreement:

*Background.* Pursuant to a Stock Purchase Agreement dated September 25, 1998...Edge River's Acquisition Company, Inc., a Massachusetts corporation ("Buyer") is this date purchasing all of the capital stock of the Company [Carter] and is being merged into the Company. The Employee [Bowlby] has been chief executive officer and a shareholder of the Company. As an inducement to Buyer to consummate the purchase of the stock of the Company...Employee has agreed to enter into this Agreement.

Despite that reference, the Employment Agreement contains the following integration clause:

This Agreement constitutes and contains the entire agreement and understanding concerning the subject matter addressed herein between the parties, and supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof, and the parties hereto have made no agreements, representations or warranties relating to the subject matter of this Agreement that are not set forth herein.

Employment Agreement, ¶ 11. The Employment Agreement is also governed by Massachusetts law. Employment Agreement, ¶ 10.

Pursuant to the Employment Agreement, Carter paid Bowlby from September 28, 1998 through December 31, 1999, a gross total of $125,000. Soon after the closing, however, Cohen allegedly discovered that during discussions and negotiations prior to the signing of the Purchase Agreement, Bowlby and Nichols had made numerous misrepresentations to him about Carter and its business.

Specifically, Carter and Cohen claim that Bowlby and Nichols 1) made various misrepresentations regarding a compound call Kerimid which is an allegedly crucial ingredient in most of Carter's product line, 2) knew that Carter had been selling parts for inclusion in certain aircraft electronic devices to third parties in violation of both an outstanding contract and federal law, and 3) misrepresented that Carter was current on all orders and that Carter's customers were generally satisfied with its products and performance.

In a demand letter dated December 26, 1999, Ahren notified Bowlby and Nichols that Carter was claiming damages for fraud stemming from the alleged misrepresentations and that it would make no further payment under Bowlby's Employment Agreement because its damages exceeded the remaining amounts payable under that agreement. On May 11, 2000, having received no response to the December 26 letter, Carter and Cohen filed a demand for arbitration with the American Arbitration Association ("AAA") in Boston ("the Antecedent Arbitration"), naming Bowlby and Nichols as respondents. The demand sought compensatory and punitive damages of $5,649,000 for breach of contract and violation of M.G.L. c. 93A.

The following day, Bowlby filed the instant suit. Count I seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201,

that the Employment Agreement is controlling and that Carter must comply with its terms and pay Bowlby all compensation and other benefits owed thereunder. In an amended complaint, filed on June 23, 2000, Bowlby added Count II which alleges that Carter has violated certain Massachusetts wage laws, M.G.L. c. 149, §§ 148, 148B and 150.

Carter and Cohen have filed counterclaims against Bowlby and Nichols for 1) unfair or deceptive acts or practices in violation of M.G.L. c. 93A, §§ 2, 9, and 11, 2) common law fraud, and 3) negligent misrepresentation. Those counterclaims all stem from the alleged misrepresentations by Bowlby and Nichols made during negotiations for the purchase of Carter.

## II. *Defendant's Motion to Stay Pending Arbitration*

Citing the arbitration provision in the Purchase Agreement, Carter contends that this Court must stay the instant suit pending resolution of the Antecedent Arbitration pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Although Bowlby's claim is for breach of the Employment Agreement, Carter argues that the two agreements should be read together thus subjecting disputes arising under the Employment Agreement to the arbitration clause in the Purchase Agreement. In support of that argument, Carter cites the preamble to the Employment Agreement which references the Purchase Agreement and also notes that the Employment Agreement formed part of Bowlby's compensation for the sale of Carter. Carter further claims that, after the closing, the parties each received binders containing the Purchase Agreement and both the unexecuted and executed employment agreements for Bowlby and Nichols, thus indicating that the individual contracts were all part of a larger, overarching agreement.

Bowlby does not dispute that execution of the Employment Agreement was a material part of the overall transaction between the parties. Nonetheless, he contends that the Purchase Agreement's arbitration clause does not apply to disputes relating to the Employment Agreement because the Employment Agreement is independent of the Purchase Agreement. He argues that the two agreements establish separate relationships: the Employment Agreement governs the parties' relationship as employer/employee while the Purchase Agreement governs their relationship as buyer/seller. More importantly, he claims that the Employment Agreement stands as an independent document by virtue of its integration clause and thus does not incorporate or adopt the Purchase Agreement's arbitration clause.

Section 3 of the FAA provides for the mandatory stay of an action brought in federal court where that action involves an issue intended by the parties to be resolved through arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In order to stay court proceedings pursuant to § 3, this Court must find that 1) there exists a written agree-

ment to arbitrate, 2) the dispute in question falls with the scope of that agreement, and 3) the party seeking arbitration has not waived its right to arbitration. *Brennan v. King*, 139 F.3d 258, 263–67 (1st Cir.1998).[1]

### A. Existence of an Arbitration Agreement

 Although there is a strong federal policy favoring arbitration, *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), that presumption of arbitrability "presumes proof of a preexisting agreement to arbitrate disputes...." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 354 (*quoting AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "Thus, a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." *Id.* at 354–55 (emphasis in original). Whether an agreement to arbitrate exists is a question of state contract law. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir.1999).

 Paragraph 10 of the Purchase Agreement clearly constitutes an agreement to arbitrate any dispute "arising out of or related to" that agreement. Accordingly, the issue before this Court is whether Bowlby's dispute with Carter regarding the Employment Agreement falls within the scope of that arbitration agreement.

### B. Scope of the Arbitration Agreement

 Determining whether a particular dispute falls within the scope of an existing arbitration clause is a matter of both state contract law and federal arbitration law. *Rosenberg*, 170 F.3d at 19. "It is at this point in the analysis that the federal presumption of arbitrability comes into play...." *Bangor Hydro–Electric Co. v. New England Tel. & Tel. Co.*, 62 F.Supp.2d 152, 158 (D.Me.1999). That presumption provides that

> as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability.

*Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927.

 Despite the federal presumption of arbitrability, this Court finds that disputes arising under the Employment Agreement are not subject to the arbitration clause in the Purchase Agreement.

---

**1.** The FAA enforces arbitration agreements "in any maritime transaction or a contract evidencing a transaction involving commerce...." 9 U.S.C. § 2. In diversity cases, § 3 of the FAA may be invoked only if the arbitration agreement is grounded in such a transaction. *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 201–02, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Because the parties have not addressed that requirement, this Court assumes they agree that this case implicates a contract involving a transaction in interstate commerce. *See Bangor Hydro–Electric Co. v.*

*New England Tel. and Tel. Co.*, 62 F.Supp.2d 152, 155 n. 4 (D.Me.1999) (making that assumption). Even absent such agreement, it is clear that both a stock purchase agreement and an employment contract between a Massachusetts corporation and a New Hampshire citizen involve interstate commerce. *See Allied–Bruce Terminix Cos., v. Dobson*, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (construing the phrase "involving commerce" to the full extent of Congress' commerce power).

The parol evidence rule bars consideration of prior or contemporaneous oral or written agreements which contradict or supplement a completely integrated writing subject to a few exceptions such as ambiguity in the integrated writing. *Kobayashi v. Orion Ventures, Inc.*, 42 Mass.App. Ct. 492, 496, 678 N.E.2d 180 (1997). The Employment Agreement was executed three days after the Purchase Agreement and is not ambiguous. The integration clause in the Employment Agreement reinforces the parol evidence rule and indicates the parties' desire for the agreement to stand on its own. The Employment Agreement therefore constitutes a fully integrated writing with respect to the employment relationship between Carter and Bowlby.

Moreover, that relationship is independent of the buyer/seller relationship between the parties established by the Purchase Agreement and thus the Employment Agreement constitutes more than a mere supplement to, or continuation of, the Purchase Agreement. *See, e.g., Consumer Concepts, Inc. v. Mego Corp.*, 458 F.Supp. 543, 545–46 (S.D.N.Y. 1978) (applying arbitration clause in "umbrella agreement" to dispute arising under "supplemental" agreement). Accordingly, the main issue in the instant suit, Carter's alleged obligations to Bowlby under the Employment Agreement, is simply not something which the parties agreed to arbitrate.

This is not to suggest, however, that the parties have raised no arbitrable issues. Carter's counterclaims for fraud, misrepresentation and violation of M.G.L. c. 93A are all premised on alleged misrepresentations made by Bowlby during negotiations for the purchase of Carter. Whether or not Bowlby fraudulently induced Carter to enter into the Purchase Agreement is a question plainly subject to arbitration un-

der the Purchase Agreement's arbitration clause. Indeed, in the Antecedent Arbitration, Carter and Cohen have asserted a claim for breach of contract.

Faced with both arbitrable and nonarbitrable issues, this Court will exercise its inherent authority to stay the entire suit pending completion of arbitration. "Even without explicit statutory authority to do so, a court, in its sound discretion, may stay any case pending before it as an exercise of its inherent power to control its own docket." *Cannavo v. Enterprise Messaging Servs., Inc.*, 982 F.Supp. 54, 59 (D.Mass.1997) (Karol, M.J.). That authority is well established within the First Circuit. *See, e.g., McCarthy*, 22 F.3d at 361 n. 15; *Sevinor v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 807 F.2d 16, 20 (1st Cir.1986); *DJ Mfg. Corp. v. Tex–Shield, Inc.*, 998 F.Supp. 140, 145–46 (D.P.R.1998); *see also Moses H. Cone*, 460 U.S. at 21 n. 23, 103 S.Ct. 927 ("In some cases...it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration.").

Exercise of this Court's discretion to stay the instant suit is appropriate for two reasons. First, concern for judicial economy supports resolving this dispute in a single forum. Second, the potential for preclusive effect in this federal proceeding of a decision by the arbitrator in the Antecedent Arbitration counsels against splitting issues regarding the Purchase Agreement and the Employment Agreement among two forums. To the extent that Cohen and Carter refused to pay Bowlby under the Employment Agreement on the grounds that Bowlby fraudulently induced Cohen to enter into the Purchase Agreement, Bowlby's claim and Carter's counterclaim are inextricably intertwined. It is therefore conceivable that in resolving the contract and Chapter 93A claims presented in the Antecedent Arbitration, the arbi-

trator might reach and address the issues underlying Bowlby's complaint.

### III. *Motions for Joinder and Intervention*

Contemporaneous with its answer and counterclaims, Carter filed a motion pursuant to Fed.R.Civ.P. 20(a) for the joinder of two additional parties, Cohen, as a counterclaim plaintiff, and Nichols, as a counterclaim defendant. Cohen has also moved to intervene as a counterclaim plaintiff pursuant to Fed.R.Civ.P. 24(b)(2). Both motions are conditioned on this Court refusing to stay or dismiss the instant suit pending arbitration. This Court's decision to stay the entire case thus renders the motions for joinder and intervention moot.

### ORDER

For the reasons set forth in the Memorandum above:

1) defendant's motion to stay pending completion of arbitration (Docket No. 6) is ALLOWED; the parties shall file with this Court reports on the status of the arbitration proceedings not less frequently than every six months;

2) the conditional motion of Ahren Cohen to intervene (Docket No. 7) is DENIED, without prejudice; and

3) defendant's conditional motion to join additional parties (Docket No. 8) is DENIED, without prejudice.

So ordered.