FIRST ALLMERICA FINANCIAL
LIFE INSURANCE COMPANY,
Plaintiff,

v.

MINNESOTA LIFE INSURANCE
COMPANY Defendant.

No. CIV.A.01–40191–NMG.

United States District Court,
D. Massachusetts.

Feb. 28, 2002.

Howard M. Cooper, Juliet A. Davidson, Todd & Weld, Boston, MA, for First Allmerica Financial Life Insurance Company, Plaintiff.

John A. Shope, Foley, Hoag & Eliot, Boston, MA, Garold Felland, Minnesota Life Insurance Company, St. Paul, MN, Roland C. Goss, Jorden Burt LLP, Washington, DC, for Minnesota Life Insurance Company, Defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

This case arises out of a dispute about the purchase price of an asset acquisition. The parties are stock life insurance companies who entered into an agreement whereby the defendant, Minnesota Life Insurance Company ("Minnesota Life"), purchased from the plaintiff, First Allmerica Financial Life Insurance Company ("First Allmerica"), certain contribution retirement plan contracts, including group annuity contracts ("the Contracts"). Pending before this Court is the defendant's motion to dismiss or to·stay and compel arbitration.

### I. *Background*

Over the course of several months, First Allmerica and Minnesota Life negotiated

and finalized the terms of an agreement governing the sale of the Contracts ("the Acquisition Agreement"). The parties also entered into several auxiliary agreements that were made part of the Acquisition Agreement, two of which were the Indemnity Reinsurance Agreement and the Administrative Services Agreement.

Just before the closing, however, a dispute arose concerning the purchase price of the Contracts. The defendant now claims that, due to inaccuracies in the financial data provided to it by the plaintiff upon which it relied, the purchase price should be reduced. The plaintiff counters that the disagreement over the purchase price stems from Defendant's reliance on what were clearly estimates of commissions contained in a prior, extrinsic document and because the Acquisition Agreement includes a merger clause, such estimates cannot be used to alter the purchase price.

Because the parties sought to close the deal despite their disagreement over what amounted to a $2 million dispute, they entered into an Escrow Agreement and an agreement entitled "Amendment 1" whereby the contested stake was placed in escrow pending resolution of the dispute. Amendment 1 contains the following limitation of claims:

> The Escrow Fund is to be established solely with respect to the Commission Issue, and neither party shall be entitled to assert any claim to all or part of the Escrow Fund which does not relate to the Commission Issue.

The related Escrow Agreement includes the following arbitration clause:

> If a dispute arises between the Seller and Purchaser with respect to the operation of this Agreement [1] on which an amicable understanding cannot be

reached, the matter shall be submitted to arbitration as provided in Article XII of the Acquisition Agreement.

Section 12.01 of Article XII of the Acquisition Agreement contains the following arbitration clause:

> Any dispute or difference with respect to the operation of this Agreement on which an amicable understanding cannot be reached shall be submitted to binding arbitration, to be conducted in accordance with the Commercial Rules of the American Arbitration Association.

Both the Acquisition Agreement and the Escrow Agreement contain choice of law clauses stating that they are to be governed by and construed in accordance with the laws of the State of Minnesota.

First Allmerica brought the instant suit in this Court 1) claiming that Minnesota Life breached the Acquisition Agreement by refusing to agree to pay over the escrowed funds and 2) seeking a declaratory judgment that it is entitled to those funds. In response, Minnesota Life filed a motion to dismiss or to stay and compel arbitration.

## II. *Analysis*

### A. Scope of the Arbitration Clause

Pursuant to the Federal Arbitration Act ("FAA"), all arbitration provisions agreed to by parties to a contract are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of Congress in enacting the FAA was "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The Supreme Court has determined that the FAA requires a

---

1. The term "Agreement" refers only to the Escrow Agreement.

district court to direct the parties to arbitrate issues with respect to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

■ Determining whether a particular dispute falls within the scope of an arbitration clause is a matter of both state contract law and federal arbitration law. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 19 (1st Cir.1999); *Bowlby v. Carter Manufacturing Corp.,* 138 F.Supp.2d 182, 187 (D.Mass. 2001). Because the parties' contract contains a choice of law provision that the agreement shall be governed by and construed under Minnesota law, the Court applies standard principles of Minnesota contract law as well as federal arbitration law in resolving the motion to compel arbitration.

■ The parties agree that there is a valid agreement to arbitrate but disagree with respect to the scope and application of the arbitration clause to their dispute. In determining whether a particular dispute falls within the scope of an arbitration clause, a presumption of arbitrability exists such that arbitration should be compelled "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Notwithstanding the strong policy in favor of arbitration, courts cannot override the intent of the parties by compelling them to arbitrate where they have not agreed to do so. *EEOC v. Waffle House, Inc.,* —— U.S. ——, 122 S.Ct. 754, 764, 151 L.Ed.2d 755

(2002); *AT & T Technologies, Inc.,* 475 U.S. at 648, 106 S.Ct. 1415.

■ In interpreting a contract, language is to be given its plain and ordinary meaning. *Brookfield Trade Center, Inc. v. County of Ramsey,* 584 N.W.2d 390, 394 (Minn.1998); *S.O. Designs USA, Inc. v. Rollerblade, Inc.,* 620 N.W.2d 48, 53 (Minn. Ct.App.2000). The arbitration clause in the Acquisition Agreement, by its plain language, applies only to disputes concerning the operation of the agreement. It states that "any dispute or difference with respect to the operation of this Agreement…shall be submitted to binding arbitration."

■ The omission of any reference to "interpretation" of the Agreement supports the limited application of the arbitration clause. In the Administrative Services Agreement, the parties specifically agreed to arbitrate disputes concerning interpretation *or* operation of that agreement so they clearly knew how to render interpretational disputes arbitrable. The omission of that term from the Acquisition Agreement's arbitration clause demonstrates an intention to make it applicable only to disputes relative to the operation of that agreement.

Reading the arbitration clause to apply only to disputes concerning the operation of the Acquisition Agreement gives meaning to Section 13.08 thereof. That section, entitled "the Interpretation provision," states:

> The parties acknowledge and agree that they may pursue judicial remedies at law or equity in the event of a dispute with respect to the interpretation or construction of this Agreement.

■ If the arbitration clause were deemed to apply to disputes concerning both operation and interpretation of the

Acquisition Agreement, the Interpretation provision would be rendered meaningless and, of course, it is settled law in all jurisdictions that courts should interpret a contract in such a way as to give meaning to all of its provisions. *Brookfield Trade Center, Inc.*, 584 N.W.2d at 394.

## B. Whether the Dispute concerns the Operation or Interpretation of the Agreement

The parties disagree with respect to the nature of the instant dispute. The plaintiff argues that the defendant is attempting to augment the description of the purchase price by relying on a prior extrinsic document which, it contends, is prohibited because the contract contains a merger clause. The only issue is, therefore, (according to the plaintiff) one of interpretation of the merger clause.

Defendant, on the other hand, responds that the dispute over the purchase price arose from plaintiff's failure to perform its obligations under the Acquisition Agreement by failing to disclose accurate financial information concerning the receipt of commissions. As such, the dispute, according to the defendant, is clearly related to the operation of that agreement.

Under Minnesota law, contract terms employed by the parties should be understood in "their plain, ordinary, and popular sense." *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19 (1960). The "interpretation" of a contract is the "ascertainment of its meaning by determining the meaning of the words employed." 11 Samuel Williston, Williston on Contracts § 30 (Richard A. Lord ed., 4th ed.1999). "Operation," on the other hand, refers to the act or process of functioning or performing. American Heritage College Dictionary (3d ed.1997).

This Court concludes that the nature of the dispute at hand is more consistent with the plain and ordinary meaning of the term "operation," than with the term "interpretation." The Acquisition Agreement establishes a process for the exchange of First Allmerica's Contracts for a purchase price to be determined by the parties through the exchange of financial information. The section of the Acquisition Agreement relating to the purchase price does not contain a defined price term but rather contemplates the establishment of a final purchase price pursuant to and after the disclosure of complete and accurate financial data by the parties. The defendant claims that plaintiff breached its obligations under the contract by failing to perform adequately its obligations in that process. Minnesota Life does not seek to contradict, alter or amend the terms of the contract, but rather, given the meaning of those terms, to establish that First Allmerica has failed to comply with them.

The Acquisition Agreement also contains provisions pertaining to representations and warranties which obligate First Allmerica to provide Minnesota Life with access to financial information that is true, complete and accurate. Defendant claims that plaintiff failed to comply with those provisions and thereby breached the Acquisition Agreement. That claim does not involve the interpretation of those terms or implicate the merger clause in any way.

First Allmerica's argument that the definition of the dispute contained in Amendment 1, i.e. the Commission Issue, requires the conclusion that the dispute is one of interpretation is not without merit. Minnesota Life apparently insisted upon inserting the following clauses into Amendment 1 to the Acquisition Agreement:

> Purchaser maintains that there exists a significant discrepancy between the actual Commissions due under the Transferred Contracts and Commission infor-

mation used by the Seller to prepare the pro forma financial statements ("pro formas") for the contracts contained in the Offering Document prepared by Seller upon which Purchaser maintains it relied and that as a result of such alleged discrepancy it is entitled to adjustment of the Purchase Price or other relief (the "Commission Issue").

The Escrow Fund is to be established solely with respect to the Commission Issue, and neither party shall be entitled to assert any claim to all or part of the Escrow Fund which does not relate to the Commission Issue.

Notwithstanding plaintiff's assertion, however, the definition of the dispute does not render the issue one of interpretation rather than operation. The Amendment accurately defines Minnesota Life's claims, i.e. that a significant discrepancy allegedly exists between the financial information supplied by First Allmerica and the final purchase price which Minnesota Life believes is justified. That alleged discrepancy forms a basis for defendant's claim that plaintiff did not fulfill its performance obligations under the contract.

■ The Escrow Agreement provides further support for the conclusion that the parties intended to arbitrate the instant dispute. That agreement contains an arbitration clause providing that any disputes with respect to the operation of the Escrow Agreement will be submitted to arbitration as provided in Article XII of the Acquisition Agreement. The referenced article is entitled "Arbitration," relates only to arbitration and describes, in great detail, the procedure for submitting disputes to arbitration.

The arbitration clause in the Escrow Agreement makes no reference to the Interpretation Provision, Section 13.08 of the Acquisition Agreement. Thus, the specific reference in Amendment 1 and the Escrow

Agreement to Article XII but conspicuous absence of any reference to Article XIII of the Acquisition Agreement is probative of an intent to arbitrate the instant dispute concerning entitlement to the monies held in escrow.

■ Finally, First Allmerica's own admission demonstrates the mutual intent of the parties to submit the subject dispute to arbitration. Minnesota Life has cited to this Court an email message sent on July 27, 2001 by Mark H. Stepakoff, First Allmerica's Vice President and Counsel, to Paul Dorn, Minnesota Life's in-house counsel regarding Amendment 1 and the Escrow Agreement. It states:

[T]he essence of the agreement should be that by placing the disputed amount into escrow, the parties will have an opportunity to amicably resolve the issue without it jeopardizing the closing; if such efforts at resolution are ultimately unsuccessful, then in the final analysis the arbitration panel will determine whether or not ML has a valid claim to a purchase price adjustment...

Since the disposition of the escrow funds will ultimately be as agreed to by the parties or as ordered by the arbitration panel, I wasn't certain I understood the reason for a procedure whereby ML, albeit subject to objection by Allmerica, would determine the amount of any purchase price adjustment. With respect to the arbitration provision set forth in paragraph 7, even if paragraphs 4 through 6 were not deleted, shouldn't the arbitration provision apply to any dispute between Allmerica and ML under the agreement...

■ First Allmerica has moved to strike that email message on the grounds that it is inadmissible given the merger clause in the Acquisition Agreement. A merger clause is evidence that a writing is

integrated as the final and complete agreement and, according to the parole evidence rule, bars the admission of antecedent and contemporaneous statements to prove the terms of the writing. *Lehman v. Stout,* 261 Minn. 384, 389, 112 N.W.2d 640 (1961). The parol evidence rule does not, however, foreclose consideration of statements made *after* the integration of the agreement. *Mankato Implement, Inc. v. J.I. Case, Inc., et al.,* No. 4–90–421, 1991 WL 327432, *1, 1991 U.S. Dist. LEXIS 20082, *7 (D.Minn.1991); *Northern Timberline Equipment, Inc. v. Gustafson,* 386 N.W.2d 778, 780 (Minn.Ct.App.1986). Because the acknowledgement of First Allmerica's counsel was made after the execution of the Acquisition Agreement, the parol evidence rule does not render it inadmissible or, more importantly, outside the purview of this Court for these purposes. If nothing else, Attorney Stepakoff's multiple references to arbitration is additional evidence that First Allmerica intended to be bound by arbitration of the purchase price dispute.

## ORDER

For the reasons set forth in the Memorandum above:

A. defendant's motion to stay and compel arbitration (Docket No. 3) is ALLOWED;

B. defendant's motion to dismiss (Docket No. 3) is DENIED; and

C. plaintiff's motion to strike (Docket No. 15) is DENIED.

So ordered.