DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE
*1339 THIS CAUSE is before the Court on two Motions to Compel Arbitration filed by Defendants Fluent, LLC and Reward Zone USA, LLC (collectively, "Defendants"). The original complaint in this matter was filed on November 20, 2017. (DE 1). It named two Plaintiffs and alleged a putative class action for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. Defendants filed a Motion to Compel Arbitration on January 12, 2018 (DE 22), and Plaintiffs subsequently filed a First Amended Class Action Complaint adding three additional Plaintiffs (DE 27). Thereafter, on January 22, 2018, Plaintiffs filed their Response to the Motion to Compel Arbitration (DE 22), to which Defendant's replied on January 26, 2018 (DE 36). On February 6, 2018, Defendants filed a second Motion to Compel Arbitration, primarily addressing the new Plaintiffs named in the amended complaint. (DE 44). Plaintiffs filed their Response on February 20, 2018 (DE 52), to which Defendants replied on February 27, 2018 (DE 57). Upon full and careful consideration of the record, I find that Plaintiffs raise an issue of fact as to whether an arbitration agreement between the Parties exists, and therefore this matter will be set for further proceedings, as described more fully below.
BACKGROUND
Defendant Reward Zone USA, LLC ("Reward Zone") and Fluent, LLC ("Fluent") work in concert with each other to acquire and sell phone numbers to their clients, who are online advertisers seeking to target prospective consumers with personalized ads. Reward Zone is a wholly-owned subsidiary of Fluent, and both are run by the same manager. (Am. Compl. ¶¶ 3, 9; DE 22-1 at 1). Reward Zone operates websites such as www.consumerproductsusa.com and www.surveyvoicesreseach.com, which offer prizes to consumers who enter information into the sites, including their phone numbers, and who consent to receiving texts and telemarketing calls to the phone numbers provided. (Am. Compl. ¶¶ 4-7; DE 22-1 at 1-2).
Plaintiffs allege that Defendants "send unsolicited text messages to consumers to drive them to their websites" and then "dupe consumers" into providing information which Defendants sell as leads to telemarketing advertisers. (Am. Compl. ¶ 6). Plaintiffs claim they received unsolicited text messages from Defendants directing them to lead generation websites operated by Reward Zone, or directing them to call a phone number operated by Fluent. (Am. Compl. ¶¶ 42, 58, 74, 88, 102-03). Plaintiffs state that they never provided Defendants with prior express written consent to be contacted. (Am. Compl. ¶¶ 50, 66, 79, 93, 109).
Defendants move to compel arbitration, arguing that prior to receiving the alleged unsolicited texts, the Plaintiffs had each visited a Reward Zone lead generation website and opted to register and participate in Reward Zone's promotions. Participation in turn required Plaintiffs to consent and agree to various written Terms and Conditions, including a mandatory dispute resolution provision which required arbitration of "any dispute" involving Reward Zone or "any aspect" of the Terms and Conditions of the website and its promotions or incentives (the "Arbitration Agreement"). (DE 22 at 4-5; DE 44 at 4-5).[1] The Arbitration Agreement also includes *1340 a clause giving the arbitrator "exclusive authority to resolve any dispute including any claim that all or any part of the Terms & Conditions, including this provision, are unenforceable." (DE 22 at 13; DE 44 at 16).
In support of their motions, Defendants submit sworn statements from a Computer System Engineer at Fluent, and the General Counsel and Chief Compliance Officer of Fluent and Reward Zone (DE nos. 22-1, 44-2, 36-1, 44-1). Defendants explain their registration process at length, and they attach documentation consisting of screenshots of each Reward Zone website where the Plaintiffs' phone numbers were purportedly entered, and where they checked a box online consenting to Terms and Conditions, including arbitration. (DE 22-1 at 5-6; DE 44 at 4-7, 9-10). Each screenshot also indicates that additional information was provided along with the Plaintiffs' phone numbers, such as birthdates, residential addresses, and email addresses.
The Plaintiffs respond with their own sworn declarations. (DE nos. 29-1, 29-2, 52-1, 52-2).[2] There appears to be no dispute that the phone numbers associated with the screenshots submitted by Defendants are numbers utilized by Plaintiffs. In the affidavits, however, Plaintiffs' contest the accuracy of the registration screenshots upon which Defendants rely. Plaintiffs state that they did not visit a Reward Zone website or fill out the registration form. In most instances, some or all of the additional information associated with Plaintiffs' phone numbers on these registration forms is not accurate, according to the Plaintiffs' declarations. Three of the Plaintiffs say the name on the registration form is not their name. All of them say the email addresses on the registration forms are not theirs. Various Plaintiffs point to inaccurate dates of birth, zip codes and home addresses as having been entered on the Defendants' screenshot registration forms. Plaintiffs further claim they never saw or agreed to Reward Zone's Terms and Conditions. They deny ever agreeing to arbitrate.
Defendants assert that no bona fide user of a Reward Zone website would have any incentive to submit inaccurate personal information with their phone number, as this would defeat the purpose of opting into the promotions. Defendants suggest that misconduct is a more likely explanation for these discrepancies. (DE 44 at 18-19). Plaintiffs respond that Defendants' position and version of the facts is not credible, given that the original, unsolicited texts which Defendants sent to Plaintiffs contained hyperlinks back to the same lead generation websites where Defendants claim that Plaintiffs had previously registered their phone numbers. (DE 52 at 2). In this sense, Plaintiffs seem to argue that the discrepancies between the phone numbers and identifying information lend support to Plaintiffs' allegations that Defendants violated the TCPA.
STANDARD
In considering the instant Motion, the Court applies the federal substantive law of arbitrability, which applies to any arbitration agreement within the coverage of the Federal Arbitration Act ("FAA"). See Lawson v. Life of the S. Ins. Co. , 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting Klay v. All Defendants , 389 F.3d 1191, 1200 (11th Cir. 2004) ). The FAA covers any "written provision in any ... contract evidencing a transaction involving *1341 commerce," 9 U.S.C. § 2. Section 4 of the FAA permits a court to compel arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. See 9 U.S.C. § 4. "[T]he Act leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd , 470 U.S. 213, 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. See, e.g., Mercury Telco Group, Inc. v. Empresa De Telecom. De Bogota S.A. E.S.P. , 670 F.Supp.2d 1350, 1354 (S.D. Fla. 2009).
DISCUSSION
The threshold issue presented here is whether a valid written agreement to arbitrate exists. "Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc. , 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted). Even in this age of internet commerce, traditional contract-based principles of offer and acceptance still guide the determination of whether a valid arbitration agreement exists. See Bazemore v. Jefferson Capital Sys., LLC , 827 F.3d 1325, 1329 (11th Cir. 2016) ("whether an arbitration agreement exists at all is simply a matter of contract") (internal quotations and citations omitted); Register.com, Inc. v. Verio, Inc. , 356 F.3d 393, 403 (2d Cir. 2004) (commerce conducted over the internet "has not fundamentally changed the principles of contract").
Plaintiffs deny the existence of valid arbitration agreements, and it is axiomatic that "parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co. , 957 F.2d 851, 854 (11th Cir. 1992). A Plaintiff can raise a genuine issue of fact regarding the validity of an arbitration agreement by (1) making an "unequivocal denial that there was an agreement," and (2) producing evidence to "substantiate the denial." Schoendorf v. Toyota of Orlando , 2009 WL 1075991, at *4 (M.D. Fla. Apr. 21, 2009) (citing Chastain ). Moreover, once an agreement to arbitrate is put "in issue," the Federal Arbitration Act provides that the court "shall proceed summarily to the trial thereof" and that "[i]f no jury trial be demanded by the party alleged to be in default ... the court shall hear and determine such issue." 9 U.S.C. § 4.
In reviewing a motion to compel arbitration, the Court applies "a summary judgment-like standard," and "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." Bazemore v. Jefferson Capital Sys., LLC , 827 F.3d 1325, 1333 (11th Cir. 2016) (internal quotation and citation omitted). Here, Plaintiffs submit signed and sworn declarations to meet their threshold burden. Plaintiffs' sworn denials are unequivocal in that they maintain that Plaintiffs did not visit Reward Zone lead generation websites on the occasions indicated in Defendants' screenshots; they did not complete the registration forms depicted in those screenshots (which would have opted them into participation in promotions); and they never agreed to the Terms and Conditions which Defendants assert bind them to arbitrate this dispute. Plaintiffs' denials place at issue *1342 the existence of binding agreements to arbitrate, particularly when considered in conjunction with the curious circumstances under which their phone numbers came to be associated with other purportedly inaccurate personal data.
Therefore, pursuant to 9 U.S.C. § 4, this case will proceed summarily to trial on the question of whether each of the named Plaintiffs entered into Reward Zone's Arbitration Agreements. I note that no demand for jury trial has been made in accordance with 9 U.S.C. § 4, and so consistent with the procedure set forth in the statute, I will hear evidence and determine this issue. See Magnolia Capital Advisors, Inc. v. Bear Stearns & Co. , 272 Fed.Appx. 782, 785-6 (11th Cir. 2008) (citing 9 U.S.C. § 4 ).
Scope of the Arbitration Trial
Having determined that this matter will proceed to a bench trial, I emphasize that the scope of the trial will be limited, both with respect to the evidentiary presentations and the matters about which this Court will entertain oral argument. The Parties should tailor their presentations accordingly, and should remain mindful of the following guidance regarding the Court's position on other issues raised in the briefings.
After careful review of the applicable law and the written submissions of the Parties, I am persuaded that as to the threshold issue of arbitrability, the delegation clause in the Arbitration Agreement requires that the arbitrator interpret the scope of that agreement and whether the dispute at issue in this litigation is covered. See Jones v. Waffle House, Inc. , 866 F.3d 1257, 1264 (11th Cir. 2017) (upholding "delegation provision" in arbitration agreement in which parties had "agree[d] to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement").
I am also persuaded that if a valid agreement to arbitrate exists, Fluent can enforce it against Plaintiffs, notwithstanding its status as a non-signatory to the agreement, due to the affiliation between Fluent and Reward Zone, and the nature of the allegations in the Amended Complaint which involve concerted misconduct by both Defendants. Recognized theories of equitable estoppel would support Fluent's right to compel arbitration under these circumstances. See JLM Indus., Inc. v. Stolt-Nielsen S.A. , 387 F.3d 163 (2d Cir. 2004) ("[A] non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."); MS Dealer Serv. Corp. v. Franklin , 177 F.3d 942 (11th Cir. 1999) (non-signatory may compel arbitration where there are allegations of substantially interdependent and concerted misconduct by both non-signatory and signatory defendants).
Also, to the extent that Plaintiffs claim they should not be bound by the Arbitration Agreement because they did not see or read the Terms and Conditions on the Reward Zone websites before checking the box to provide consent, I would be inclined to reject such arguments. See Brueggemann v. NCOA Select, Inc. , No. 08-80606-Civ, 2009 WL 1873651, at *2 (S.D. Fla. June 30, 2009) (enforcing an online arbitration agreement contained within the terms and conditions of Overstock.com's website, despite Plaintiff's contention that he never saw or agreed to the terms and conditions, where "prior to entering the website, individuals [were] told, '[e]ntering this Site will constitute your acceptance of these terms and conditions. If you do not agree to *1343 abide by these terms, please do not enter the Site.' ").
The Parties are advised that this trial will be aimed solely at resolving the issue of whether the individual Plaintiffs checked the registration and consent boxes on the Reward Zone websites, because I am convinced that whoever checked the boxes is bound by the Terms and Conditions, including the Arbitration Agreement. On the record as it presently stands, I cannot conclude Plaintiffs did so.
CONCLUSION
Based upon the foregoing, it is ORDERED and ADJUDGED that:
1. Ruling is hereby DEFERRED on Defendants' Motions to Compel Arbitration (DE 22; DE 44).
2. A bench trial will be held pursuant to 9 U.S.C. § 4 to determine the existence of binding arbitration agreements. These proceedings will commence on Tuesday, April 3, 2018, at 10:00 AM, in West Palm Beach, Florida.
3. Plaintiffs' Motion for Leave to File a Sur-Reply in Opposition to Defendants' Motion to Compel Arbitration (DE 37) is DENIED, because the Court will entertain arguments of counsel at the trial.
4. Defendants' Motion to Stay (DE 24) is GRANTED, and all pretrial deadlines set forth in the Scheduling Order (DE 9) are STAYED until further order of the Court.
5. Plaintiffs' Motions for Extension of Time (DE 39, DE 61) are DENIED AS MOOT, in light of the Court's ruling on the Motion to Stay (DE 24).
DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 12 day of March, 2018.

With respect to Plaintiff Orr, Defendants state they have no record of her telephone number in their database in 2017, when she alleges she received the unsolicited text. Defendants say that Plaintiff Orr did, however, opt into Reward Zone's promotions in January 2018, and agreed to the Terms and Conditions, including the Arbitration Agreement, at that time. (DE 44 at p. 3).

No affidavit was submitted from Plaintiff Trzupek and the Response does not address her position on whether she consented to the Arbitration Agreement.